*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARCI HAWKINS, | ) | |
| | ) | Supreme Court No. S-14964 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-12-00927 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SONIA M. WILLIAMS and | ) | |
| DANIEL WILLIAMS, | ) | No. 6858 – December 20, 2013 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Marci Hawkins, pro se, Wasilla, Appellant. Sonia Williams and Daniel Williams, pro se, Wasilla, Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

A grandmother petitioned for visitation with her daughter's four children. After a trial, the superior court denied the petition, finding that the grandmother failed to show by clear and convincing evidence that visitation was in the best interests of the

children.  The grandmother appeals, arguing that:  (1) the superior court erred by applying the clear and convincing burden of proof; (2) the record does not support the superior court's conclusion that the grandmother had not established ongoing personal contact with the children; and (3) the record does not support the superior court's conclusion that the grandmother failed to prove visitation was in the best interests of the children.  We conclude that the superior court applied the correct burden of proof and that its conclusions were adequately supported by the evidence presented at trial.

## II.    FACTS AND PROCEEDINGS

Sonia and Daniel Williams have four children.  Marci Hawkins is Sonia's mother.  Marci has two other living daughters; she also had a son who died in April 2011 at the age of 27.

Marci was present at the birth of each of the Williams children, and she occasionally babysat the two oldest children before Sonia and Daniel were married.  But Sonia and Marci "have butted heads a lot since about 2001."  According to Marci, their relationship has worsened since 2009, when Marci divorced her ex-husband and remarried.

At the beginning of 2011, Sonia and Marci were beginning to work on improving their relationship.  But after Marci's son died, Marci and her three daughters had a conflict over his funeral arrangements.  Marci sent an emotional email to her daughters, followed by a similar letter.  Both communications indicated that Marci wanted "no further contact" with her daughters.

In January 2012, Marci filed a petition for grandparent visitation.  She alleged that Sonia and Daniel had denied her contact with her grandchildren since April 2011.  In their answer, Sonia and Daniel responded that visitation was not in the best interests of the children because Marci had "not been in the children's life since August 2009" and Marci had ended all communication with their family.

The superior court held a half-day trial in July 2012. After the trial, the superior court denied the petition for grandparent visitation. The court found that "[i]t has been four years since Marci has seen the children, and she has not made attempts to reunify without court involvement." The court also concluded that Marci had failed to show by clear and convincing evidence that visitation was in the children's best interests. Marci now appeals to this court.

## III. STANDARD OF REVIEW

We review the best interests determination supporting a visitation award to determine whether "the superior court has abused its discretion or if its controlling findings of fact are clearly erroneous."[1] "A factual finding is clearly erroneous when a review of the record leaves a definite impression that a mistake has been made."[2] Whether the superior court applied the correct burden of proof to a visitation issue is a question of law this court reviews de novo.[3]

## IV. DISCUSSION

Under AS 25.20.065(a), a grandparent may petition the superior court for "reasonable rights of visitation" with a grandchild.[4] A superior court may order such visitation if: "(1) the grandparent has established or attempted to establish ongoing

---

[1]    *Osterkamp v. Stiles*, 235 P.3d 178, 183 (Alaska 2010) (quoting *R.I. v. C.C.*, 9 P.3d 274, 277 (Alaska 2000)) (internal quotation marks omitted).

[2]    *Id.*

[3]    *Harris v. AHTNA, Inc.*, 193 P.3d 300, 305 (Alaska 2008) (explaining that this court generally reviews allocation of the burden of proof de novo).

[4]    A grandparent's ability to petition for visitation under AS 25.20.065(a) is limited by AS 25.20.065(b), which addresses the ability of a grandparent to petition for visitation after certain child custody orders are issued.

personal contact with the child; and (2) visitation by the grandparent is in the child's best interest."[5]

**A. The Superior Court Properly Required Marci To Prove That Visitation Was In The Children's Best Interests By Clear And Convincing Evidence.**

In *Evans v. McTaggart*, we considered the application of AS 25.20.060, which states that a court making a custody decision "shall provide for visitation by a grandparent or other person if that is in the best interests of the child."[6] We explained that in order to protect a parent's constitutional rights, "special weight must be given to a fit parent's determination as to the desirability of visitation with third parties."[7] Therefore, a grandparent seeking visitation must bear "the burden of proving that visitation . . . is in the best interests of the child . . . by clear and convincing evidence."[8]

Marci argues that the superior court erred when it required her to prove by clear and convincing evidence that visitation was in the children's best interests. She challenges the superior court's order, which stated that "[v]isitation can be ordered over the objection of a legal parent if the court finds by clear and convincing evidence that the parent is unfit to make visitation decisions." Marci contends that there was no valid

---

[5] AS 25.20.065(a).

[6] 88 P.3d 1078, 1087 n.40 (Alaska 2004) (quoting AS 25.20.060(a)).

[7] *Id.* at 1089; *see also Troxel v. Granville*, 530 U.S. 57, 71-73 (2000) (plurality opinion) (holding third-party visitation statute violated a parent's due process right to make decisions concerning the care, custody, and control of her children because it did not accord "any material weight" to the parent's decision).

[8] *Evans*, 88 P.3d at 1089 (construing AS 25.20.060 narrowly to preserve its constitutionality); *see also* 69 AM. JUR. 3d *Proof of Facts* § 5 (2002) (noting that in most states the burden of proving that visitation is in the best interests of the child will be on the grandparent as a moving party).

objection to visitation because Sonia did not testify and Daniel did not object to having Marci see the children under certain circumstances. Therefore, she reasons that the clear and convincing standard should not apply.

Marci's argument is unpersuasive. Any visitation order infringes on a parent's due process right to make decisions regarding "the care, custody, and control" of a child.[9] It follows that a parent can oppose a petition for court-ordered visitation without objecting to all types of visitation with the third party. Sonia and Daniel objected to court-ordered visitation by opposing Marci's petition in their answer. And although Daniel testified that he had no objection to Marci seeing the children generally, his testimony showed that he had concerns about allowing any visitation with the children until Marci could communicate with him and Sonia. It was not a clear error for the superior court to conclude from these circumstances that Sonia and Daniel objected to court-ordered visitation. The court correctly required Marci to show that visitation was in the best interests of the children by clear and convincing evidence.

### B. It Was Not A Clear Error For The Superior Court To Find That Marci Did Not Establish Ongoing Personal Contact With the Children.

Marci challenges several of the superior court's findings with respect to AS 25.020.065(a)(1), the ongoing personal contact requirement. Marci argues that the superior court clearly erred in finding that she "voluntarily disconnected from her grandchildren." Marci argues that although she did not want to communicate with her daughter, she did not intend to cut off communication with her grandchildren. Marci relies on her testimony that she sought help from friends and family to establish visitation with her grandchildren before filing the complaint and that she attempted to add the oldest child as a friend on Facebook.

---

[9] *See Troxel*, 530 U.S. at 66.

In particular, Marci disputes the superior court's finding that she "cut off all contact with her daughter and the children after the death of her son." But there was uncontradicted evidence that Marci sent two communications to her daughters indicating that she wanted "no further contact" with them as a result of the conflict surrounding her son's funeral. The record also shows that Marci had no direct contact with Sonia and Daniel or their children after the funeral. From this record, it was not a clear error for the court to find that Marci intended to cut off all contact with Sonia, Daniel, and their family.

Marci also disputes the court's statement that "[a]lthough Sonia has reached out to Marci, Marci has not wanted a relationship with Sonia." While the superior court did not identify specific evidence in the record when it made this finding, Marci did admit that she had not spoken to Sonia and Daniel since her son's funeral. Any error here is harmless: it was Marci's burden to show that she had attempted to maintain ongoing contact with the children, rather than Sonia's burden to show that she contacted Marci.[10]

The superior court also stated that Marci had not seen the children in "four years." This statement is arguably incorrect. Marci testified that she had seen the children during two visits since 2009: a visit in January 2011 and a visit at another grandchild's birthday party in April 2011. But we conclude that any misstatement in this finding was harmless. Marci had such limited interaction with her grandchildren that the superior court did not commit clear error when it concluded that she had not clearly established ongoing personal contact.

---

[10]    *See Evans*, 88 P.3d at 1089 (explaining that non-parents have the burden of proof).

We will not reverse a custody or visitation decision for a factual misstatement unless "the entire record demonstrates that the controlling findings of fact are clearly erroneous[.]"[11] In this case, none of the alleged misstatements that Marci relies on would warrant reversal.

### C. It Was Not An Abuse Of Discretion To Find That Visitation Was Not In The Best Interests Of the Children.

Marci also challenges the court's conclusion that visitation was not in the best interests of the children. The superior court stated that "[i]t is not in the children's best interests to be involved in family drama, particularly when Sonia has stated that she would permit visitation if Marci would seek help with grief issues relating to the death of her son."

Marci had the burden to show that visitation was in the best interests of the children. It was not enough for Marci to allege generally that grandchildren should be allowed to visit their grandparents.[12] But Marci presented little direct evidence showing that visitation was in the best interests of her grandchildren. She primarily presented general evidence of her experience with children and her good character.

In contrast, Sonia and Daniel presented evidence that supported the superior court's conclusion. Sonia's sister testified that she was concerned Marci had not addressed her grief over her son's death and she believed that Marci presented a risk to her grandchildren. Daniel testified that he was concerned that Marci would have a mental breakdown if her son was mentioned during a visit. Daniel clarified that he was not opposed to the children seeing Marci; he explained that he "would like her to

---

[11] *Melendrez v. Melendrez*, 143 P.3d 957, 959 (Alaska 2006).

[12] *See Troxel*, 530 U.S. at 72-73 (holding that superior court's findings that petitioners were loving people and children benefit from grandparents were insufficient to overcome the weight which must be given to fit parents' objection to visitation).

communicate with us," so he and Sonia could evaluate whether visitation would be good for the children. In contrast, when Marci was asked whether it would be in the best interests of the children to fix her relationship with her daughter before involving the children, Marci answered, "I don't know."

We conclude that the superior court did not abuse its discretion when it determined that it would not be in the best interests of the children to have court-ordered visitation with Marci.

## V. CONCLUSION

We AFFIRM the superior court's order denying the petition for grandparent visitation.