*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STEFANIE ROSS and JOHN BAUMAN, ) | |
| ) | Supreme Court No. S-15473 |
| Appellants, ) | |
| ) | Superior Court No. 3KN-13-00241 CI |
| v. ) | |
| ) | O P I N I O N |
| CARL BAUMAN, ) | |
| ) | No. 7024 – July 24, 2015 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, William F. Morse, Judge.

Appearances: Jennifer Wagner and Timothy W. Seaver, Seaver & Wagner, LLC, Anchorage, for Appellants. Roberta C. Erwin and Robert C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A grandparent petitioned for restriction-free visitation with his grandchildren after they moved out of state. The parents conceded that visitation with the grandparent was in the children's best interests, but opposed court-ordered visitation, stating that they had never denied reasonable visitation and would continue to allow visitation with some restrictions. Without finding any of the parents' visitation

restrictions unreasonable or any history of denying reasonable visitation, the superior court entered an order requiring "reasonable" visitation. The parents appealed, arguing that the order violated their constitutional rights to the care, custody, and control of their children. Immediately after oral argument we vacated the superior court's visitation order. We now explain the basis for that order, and because the superior court's findings preclude the possibility that a constitutional visitation order could be entered based on the record in this case, we also dismiss the grandfather's visitation petition in its entirety.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Stefanie Ross and John Bauman are the unmarried parents of two young children. In September 2012 Stefanie and the children moved from Homer to Washington to live with her family while her grandparents reached the ends of their lives. In December 2013 John joined Stefanie and the children in Washington. They plan to stay there indefinitely.

Carl Bauman is John's father, and Carl resides in Soldotna. When the children lived in Homer, Carl occasionally visited with them. Carl's domestic partner, Simone, was a point of contention: Stefanie and John did not want Simone around the children; Carl disagreed with this choice; and Simone continued to be present during many of Carl's visits with the children. Stefanie and John also disapproved of other occupants of and visitors to Carl and Simone's home, including Simone's daughter.

After Stefanie and the children moved to Washington, Carl had no contact with them. The reason for this lack of contact is contested. In April 2013 Carl attempted to visit the children in Washington during a two-night stop there when he and Simone were returning to Alaska from Florida. It is unclear if Carl waited until he was in town to call Stefanie and her family to coordinate visitation or if he began calling sooner. Stefanie's grandfather was dying, and Stefanie did not coordinate visitation with Carl.

Carl dropped off gifts for the children at the house where Stefanie was staying, but did not see them or her.

At some point after the initiation of these court proceedings Carl began having telephone calls with the children, but he had no plans to visit the children again until summer 2014.

## B. Proceedings

### 1. Pre-evidentiary hearing proceedings

In March 2013, shortly before the failed April visit noted above, Carl petitioned for grandparent visitation, seeking "two weeks of unfettered grandparent visitation annually, in Alaska or another state of [Carl's] choice." In their answer to Carl's petition, Stefanie and John asserted that Carl had never been denied reasonable visitation and that AS 25.20.065[1] (Alaska's grandparent visitation statute), the U.S. Constitution, and the Alaska Constitution all require such a denial before a grandparent can successfully petition for visitation.

The court held a status hearing in September. Carl stated that the later-planned evidentiary hearing could take longer than he anticipated if Stefanie and John were to "challenge the constitutionality of [AS 25.20.065]." Stefanie and John

---

[1] Providing in pertinent part:

Except as [otherwise] provided . . . , a child's grandparent may petition the superior court for an order establishing reasonable rights of visitation between the grandparent and child if

(1) the grandparent has established or attempted to establish ongoing personal contact with the child; and

(2) visitation by the grandparent is in the child's best interest.

AS 25.20.065(a).

responded that they would likely "make constitutional arguments . . . because [Carl] has not been denied access. He's been denied the access that he wants." Carl argued that if a motion regarding constitutionality were made, he would need time between the motion's filing and the final hearing to conduct unexplained "medical" discovery. The court set a December deadline for "motions regarding the statute," including "motions regarding the parameters or validity of the grandparent visitation statute." The record contains no motions filed between the September hearing and the December deadline.

In April 2014 the parties filed hearing briefs. Carl detailed his and Simone's interactions with the children. He also highlighted parenting disputes he and Simone had with Stefanie and John: Simone celebrates Easter, but Stefanie does not; Stefanie "enforced a rigid diet on the children," and Simone would offer dessert to the children in contravention of the diet; Carl requested overnight visits, but John and Stefanie refused; Carl and Simone once bought many new outfits for one of the children, but Stefanie only gave some to the child because all would be "too much"; and Stefanie and John do not like their children calling Simone "Grandma Simone." Carl argued that "absent a court order, meaningful visitation is not likely to occur," noting his advancing age and the physical distance between him and his grandchildren.

Stefanie and John argued that "[b]efore the Court [could] order any grandparent visitation over the parents' objection, [Carl would have to] establish by clear and convincing evidence that [Stefanie and John] are unfit to make visitation decisions." According to Stefanie and John, absent this showing, ordering visitation would violate their constitutional rights as parents. Stefanie and John asserted that they reasonably forbade contact between Simone and the children because of Simone's criminal history, mental health issues, alcoholism, drug problems, and undesirable associates. Stefanie and John also stated that they had not denied Carl visitation (without Simone), that after the children moved to Washington Carl had not sought visitation with them before filing

the petition, and that after filing the petition Carl had not attempted to make telephone contact with the children for six months.

### 2. Evidentiary hearing

The superior court began the evidentiary hearing by attempting to restate the parties' positions, identifying the crux of the dispute as whether Carl's visitation could include Simone. Stefanie and John clarified that — because they were fit parents making reasonable visitation decisions — they opposed *any* court-ordered visitation as an infringement on their constitutional rights as parents. The court repeatedly questioned Stefanie and John's "philosophical objection" to court-ordered visitation, focusing on "practical" matters including the physical distance between Carl and the children and a hypothetical future where Stefanie and John might unreasonably deny Carl visitation.

The parties then argued what standard could constitutionally be applied in determining whether to order grandparent visitation. Carl asserted that the proper standard was whether the grandparent had proved by clear and convincing evidence that "visitation was in the best interest of the children." Stefanie and John asserted that Carl's simple "best interest" standard was constitutionally insufficient to protect fit parents' reasonable visitation decisions. They argued that the correct standard was whether the grandparent had proved by clear and convincing evidence that the "parents are unfit to make visitation decisions" or that the fit parents' visitation decisions were unreasonable and detrimental to the children. Although the court announced that it would detail the final standard in a later written opinion, it appeared to agree with Carl's standard. The court also assumed that it would be in a child's best interest to visit with a grandparent, barring a showing of the grandparent's unfitness.[2]

---

[2]     For instance the court stated: "[W]hy would it ever be in a child's best interest not to have a grandparent relationship? . . . [I]f the grandparent . . . [is] taking
(continued...)

Stefanie and John stipulated that Carl had established an ongoing relationship with the children, as required under AS 25.20.065(a)(1), but added that "they strongly believe[d] . . . [Carl] chose to reduce his contact with the kids in exchange for filing [the visitation] petition." Then modifying his initial request for "unfettered" visitation, Carl agreed that any visitation order could exclude Simone and her children.

The superior court detailed possible visitation orders while questioning Stefanie; although agreeing with the court's stated goals, Stefanie maintained her position that any court order would be overly intrusive. The court responded that the parents and Carl were "suspicious" of each other and that there was the "potential for more problems" without a court order, but that after trust was restored under an order, the order could be lifted because it would then be "unnecessary." When asked by the court what her rules for the children would be during a visit with Carl, Stefanie stated that the children's sugar intake must be minimal. The court responded, "I mean, you got to let the guy give the kid a bowl of ice cream." The court earlier had also stated that "kids deserve to get sort of spoiled by grandparents" by, for example, going to bed late and eating extra sugar.

At the end of the hearing's first day the court stated that it had a "tentative decision" and "[s]ort of the behavioral order" in mind. After receiving the court's draft visitation order on the second day, Stefanie and John objected to it. During John's testimony the court asked why it should trust him to allow visitation and questioned why he did not reach out to ensure Carl visited with the children after the move to Washington. John responded that he wanted his children to have a relationship with Carl, but "[t]he last time we spoke [Carl] made it very clear he's rejected all our

_____

<sup></sup>**2**    (...continued)
care of [a grandchild] responsibly[,] [w]hen would it ever be detrimental to a child to have a grandparent?"

proposals. . . . He wants things his way. There's no wiggle room. That's why we're here in court today. He doesn't like our answer." The court asked John what he would consider "reasonable" visitation, and John refused to give a definite answer, stating that he did not want to limit the time his children had with Carl. John also stated, "I don't believe anybody is qualified to be [our children's] parents more than we are." The court interjected, "[C]omments like 'replacing us as parents' [are] indicative of a complete misperception of what's going on here."

During closing arguments Stefanie and John argued that the best way for Carl to get visitation with the children would be to communicate directly with Stefanie and John, which he failed to do before filing this case. The court interjected that Stefanie and John had a responsibility to reach out to Carl too, that it was "troubled by both sides' stubbornness," and that "the inertia of . . . distance" would make rekindling Carl's relationship with the children "very difficult" without "active, affirmative efforts on both sides." Stefanie and John argued that only because they "were willing to put up with [Carl] and turn aside over and over again because they felt it was an important relationship" did Carl have such a loving relationship with the children. They contended the court was unfairly burdening them by presuming they should have sought visitation between their children and someone who "sued them instead of picking up a phone" and calling to coordinate a visit.

When Stefanie and John again argued that a mere best interests standard would insufficiently protect their constitutional rights, the superior court again asked about a hypothetical future where Stefanie and John refused Carl visitation for no reason. They responded that they had never refused visitation without a reason and even had allowed visitation despite their stated visitation boundaries being disregarded. Stefanie and John argued that it would make no sense for the court to take their fundamental constitutional right to control visitation "just in case in the future they do something

else." They stated that, based upon our decision in *Evans v. McTaggart*,[3] the proper standard to judge parental decision making in such a hypothetical circumstance would be whether the parents' choice is "plainly contrary to the child's best interests." Stefanie and John argued that the court should not issue an order *in line with* their visitation choices but, instead, should issue *no* order.

The superior court stated, "I'm not understanding the objection to the phenomenon of an order." Stefanie and John argued that issuing an order would convey to Carl and other uncooperative relatives that they do not have to communicate or work with parents — or respect parents' reasonable restrictions. They also replied: "What the court is suggesting is that for the next 12 years this court is going to be overseeing whether or not there's visitation for these kids and . . . what the restrictions ought to be." The superior court responded: "I can assure you I hope with all of my heart that that is not the case."

### 3. Visitation order

The superior court issued a visitation order the day after the hearing concluded, entitled "First Visitation Order," granting in part and denying in part Carl's petition:

> 1.     Carl . . . shall have reasonable in person visitation with his paternal grandchildren . . . in Washington.
>
> 2.     Carl . . . shall have reasonable telephonic and Skype (or its equivalent) visitation with [the children].

---

[3]     88 P.3d 1078, 1089 (Alaska 2004) ("[S]pecial weight must be given to a fit parent's determination as to the desirability of visitation with third parties. We believe that this can be accomplished by imposing on the third person the burden of proving that visitation by the third person is in the best interests of the child and by requiring that this be established by clear and convincing evidence. This would provide effective protection for a parent's choice, except where the choice is plainly contrary to a child's best interests." (footnote omitted)).

3. Carl shall not allow Simone . . . or [her daughter] to have direct or indirect contact with the children.

The court stated that "Stefanie and John do not oppose Carl having visitation with the children," but recognized that they challenged the legality of a visitation order in their case. The court stated, "There is no dispute that Stefanie and John are each a fit parent," adding:

> Had Carl claimed that either parent was unfit or had made unfit decisions . . . , the court would have found that each was, in general, a fit parent. None of the specified decisions, even if unwise (and the court is not finding that any particular decision was), call[s] into question the fitness of either parent.

Regarding the legal standard, the court stated, "[A grandparent visitation] order is constitutional if the moving party shows 'that visitation [is] in the best interests of the children by clear and convincing evidence,' " citing our decision in *Hawkins v. Williams*.[4] Stating that "[t]he mere fact of a visitation order does not necessarily violate the due process rights of a parent," the court added in a footnote:

> The court notes that while the parents' desire to be free from a court order may be understandable, they will always be subject to the law and the possibility of a grandparent's attempt to exercise his or her statutory rights. Even if the court declined to issue a visitation order on a finding that the parents will voluntarily allow Carl to visit the children, if [Carl] believes that [the parents] are not acting in the best interests of the children because they are denying [the children] (and him) reasonable visits, then he can file a new motion pursuant to AS 25.20.065. To the extent that Carl can always file such a motion, [the parents] will always be subject to judicial scrutiny. The absence of an order provides illusory freedom from future judicial involvement.

---

[4] 314 P.3d 1202, 1205 (Alaska 2013).

The superior court also explained its understanding of how — after finding that a visitation order should issue because visitation has been proven to be in the best interests of the child — a parent's constitutional rights must be considered when fashioning the *terms* of the order:

> The court construes an . . . implicit lesson from *Hawkins*, *Evans*, and *Troxel*[ *v. Granville*][5] that guides its construction of AS 25.20.065(a) and the contents of a visitation order. Once it has determined that visitation is in the best interests of a child, the court is not entirely free to impose "reasonable rights of visitation between the grandparent and child[.]"[11] The rights of visitation must be more than reasonable; they must be narrowly fashioned to protect the parent's rights as much as is possible (consistent with the best interests of the child). Thus, a condition or right of visitation that may be reasonable in a dispute between parents is not necessarily permissible between parents and a grandparent. Even if the condition is reasonable between parents and grandparents, the court should be careful not to impose a right or condition that is too restrictive of the parents' rights. By fashioning only narrowly tailored rights or conditions of visitation, the court takes care to give the requisite "special weight" to the parents' determination as to the desirability of visitation.

---

[11]    AS 25.20.065(a). The authority of the court to order "reasonable rights of visitation" is limited by the requirement that the terms of the order be reasonable. The court's statement that it "is not entirely free to impose 'reasonable rights of visitation,' " refers not to the limits of reasonableness, but to additional constraints necessary to protect the parents' constitutional rights.

---

[5]    530 U.S. 57 (2000).

Under the heading "The Best Interests of the Children," the superior court stated, "[a]ll parties agree that it is in the best interests of [the children] to have visitation with Carl," but that "[i]f they had not agreed, the court would have [made] such a finding by clear and convincing evidence." The court found "by clear and convincing evidence that a visitation order is necessary to ensure that Carl actually visits his grandchildren," adding an extensive explanation of its plans and reasoning:

> [The court] does not find that a detailed visitation schedule or specification of visitation rights is necessary now, or in the near term, say in the next year. The court will require reasonable visitation. The court is willing to give the parents an opportunity to demonstrate that they will permit reasonable visitation.
>
> . . . .
>
> . . . The children have had limited telephonic and almost no in person contact with Carl in 16 months. Now is not the time to begin overnights. If they are allowed, either by the parents or the court, there first must be a demonstration of Carl's capacity to care for the children overnight in the physical environment . . . where that would be proposed to occur. There must also be a demonstration of the children's comfort with visits that have occurred and the proposed arrangement.[14]

---

[14] The court is not setting these as conditions, but only as illustrations of the evaluation that the decision maker whether the parents or the court might undertake. If the court is presented with a future motion for overnights, then it will make the evaluation necessary given the circumstances as they then exist.

Although "not overrid[ing]" Stefanie and John's preference that they supervise Carl's visits with the children, the superior court added a caveat: "The court observes that at some point it is likely that Carl should be trusted to care for the children

for a number of hours without parental supervision.  At some point a continued refusal to allow unsupervised visitation will be found to be unreasonable."  The court clarified that, at present, it was requiring only "reasonable" visitation and not unsupervised or overnight visitation, but that it would expect visitation conditions to change over time:

> As there are successful visitations and the children mature, the frequency, duration, and conditions of the visitations would typically change to reflect past success.  As the children grow their needs change and the details of what type of visitation will be needed to change [sic] in order to allow them to have a rich relationship with Carl.

The superior court explained the reasoning behind its finding that a visitation order was necessary to ensure visitation between Carl and the children, finding fault with all parties' behavior and focusing upon the children's best interests:

> The relationships between Carl and his son and Carl and Stefanie have soured over time.  The move to Washington has enabled some of the wounds to heal or at least not to be re-opened.  But all three adults have to bear some responsibility to achieve the mutual goal of fostering a good relationship between Carl and the children.  All the adults must bear some responsibility for the nearly nonexistent interaction between Carl and the children since Stefanie moved to Washington.  It would be unacceptable to allow the poor communication between Carl and the children that occurred in 2012-13 to continue for the remainder of 2014.
>
> The court finds that it is unlikely that visitation will improve or even occur unless there is a visitation order in place.  The failure of Stefanie or John to reach out to Carl to facilitate contact, much less visitation, in 2012-13 is troubling.  The court appreciates that when Stefanie first moved she was preoccupied with the likely imminent deaths of her grandparents.  The court appreciates that the parents did not unreasonably perceive the filing of the petition to be a challenge to their authority and an act that was in no small

part motivated by a power struggle between Carl and them. But at some point the best interests of the children have to return to the forefront. That can only be accomplished by the parents setting aside their anger at Carl and facilitating the grandparent relation.

This is not to suggest that they are more responsible for the state of affairs than is Carl. But the obligations of parenthood require compromise when compromise is necessary to achieve what is in the best interests of the children--here the restoration and continuation of a relationship with Carl.

If he is to have any hope of regaining his relationship with his grandchildren, he must repair his relationship with John and Stefanie. That can only be done if he develops some empathy about their perceptions of his actions. The petition, even though primarily (though not exclusively) motivated by a desire to see the children, was an insult to the parents. It was foreseeable that it would damage his relationship with Stefanie and especially John. Carl's blindness to why they would reasonably question his insistence that [Simone] be accepted by them is troubling. Carl is entitled to love and live with whomever he pleases. But he cannot expect the parents of young children not to protect them from her faults or the troubling behaviors that her extended family and some of her friends have exhibited in his home, around Stefanie, John and Carl's other children, and in the community. John and Stefanie would be remiss not to restrict the access of these people to [their children]. The court will allow the parents to continue to play the primary role in protecting their children and deciding how that needs to be done. Only if they act unreasonably will the court intervene to ensure that the grandchildren have suitable access to Carl.

## 4.    Appeal

Stefanie and John argue on appeal that the visitation order violates their due process rights to make decisions regarding the care, custody, and control of their children

under the U.S. Constitution's Fourteenth Amendment. In particular they argue that their constitutional rights as parents will not be adequately protected unless Carl shows that court-ordered visitation *contrary* to their visitation preferences is in their children's best interests, not merely that visitation with Carl is in their children's best interests.

Carl responds that Stefanie and John's constitutional argument was waived. He argues that AS 25.20.065 is presumed to be constitutional and that Stefanie and John failed to carry their burden to prove otherwise. Carl also argues that our decisions in *Evans v. McTaggart*[6] and *Hawkins v. Williams*[7] already have narrowed the statute's scope to an entirely constitutional range, such that Stefanie and John's constitutional challenge must fail. Carl additionally argues that the narrow fashioning of the visitation order itself precludes finding it unconstitutional.

## III. STANDARD OF REVIEW

"We . . . review constitutional questions de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[8] "Likewise, 'whether the [trial] court applied the correct standard in a custody [or visitation] determination is a question of law we review de novo.' "[9] And "[w]hether factual findings are sufficient to support an award of custody [or visitation] to a third party is a legal issue to which we apply our independent judgment."[10]

---

[6] 88 P.3d at 1078.

[7] 314 P.3d at 1202.

[8] *Skinner v. Hagberg*, 183 P.3d 486, 489 (Alaska 2008) (footnote omitted).

[9] *Osterkamp v. Stiles*, 235 P.3d 178, 184 (Alaska 2010) (alteration omitted and alterations added) (quoting *Elton H. v. Naomi R.*, 119 P.3d 969, 973 (Alaska 2005)).

[10] *Id.* at 183-84 (quoting *J.W. v. R.J.*, 951 P.2d 1206, 1209 (Alaska 1998),
(continued...)

## IV.    DISCUSSION

### A.    Waiver

Carl argues that because Stefanie and John did not raise a "defense of [un]constitutionality" in their answer and did not file a motion challenging AS 25.20.065's constitutionality by the date the superior court specified, he "did not undertake the additional discovery he referred to [at the pretrial hearing], nor . . . cross examine Stephanie [sic] . . . on her previous health and the potential effects of [sic] her reasoning process." Carl argues that Stefanie and John's hearing brief "did not challenge the constitutionality of the statute" and that the evidentiary hearing's pre-testimony discussion "went to the nature of grandparent visitation." He argues that the superior court "established with the parties that the evidentiary standard was clear and convincing evidence that visitation was in the children's best interests," and "[t]herefore[] the evidentiary standard was agreed to by the parties and any argument to the contrary has been waived."

But Stefanie and John do not argue now — nor did they before the superior court — that AS 25.20.065 is facially unconstitutional. Instead they argue that AS 25.20.065 is unconstitutional as applied in this case.[11] And contrary to Carl's

---

[10]    (...continued)
*overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 n.34 (Alaska 2004)) (internal quotation marks omitted).

[11]    *See State v. ACLU of Alaska*, 204 P.3d 364, 372 (Alaska 2009) ("When statutes are found by a court to be unconstitutional, they may be found to be unconstitutional as applied or unconstitutional on their face. . . . A holding that a statute is unconstitutional as applied simply means that under the facts of the case application of the statute is unconstitutional. Under other facts, however, the same statute may be applied without violating the constitution.").

Because Stefanie and John do not argue that AS 25.20.065 is facially
(continued...)

arguments, Stefanie and John consistently argued during the proceedings that their constitutional rights would be violated if the superior court did not place a heightened burden on Carl. They asserted in response to Carl's visitation petition that Carl had never been denied reasonable visitation and that AS 25.20.065, the U.S. Constitution, and the Alaska Constitution all required such a denial before a grandparent could petition for visitation. Stefanie and John's hearing brief focused upon the effect of their constitutional rights on the legal standard applicable to the case. The evidentiary hearing's pre-testimony discussions were dominated by Stefanie and John's argument that their constitutional rights demanded a higher evidentiary burden on Carl than merely showing that visitation was in the children's best interests. Stefanie and John never conceded that a mere "visitation is in the best interests of the child" standard sufficiently protected their constitutional rights. And although the court tended to disagree with Stefanie and John's proffered standard, it did not affirmatively "establish[] with the parties" that the lower standard was applicable.

Carl is correct that the superior court set a deadline for "motions regarding the [grandparent visitation] statute," including "motions regarding [its] parameters or

---

[11]      (...continued)
unconstitutional, Carl's argument that the statute is presumed to be constitutional and that Stefanie and John failed to carry their burden to prove otherwise is inapplicable to this case.

Carl also states in his brief that the Attorney General was neither notified — or was untimely notified — of Stefanie and John's constitutional challenge nor given an opportunity to respond to it. But the Clerk of Court notified the Attorney General's Office of the constitutional argument in this case on July 16, 2014, and the Attorney General failed to intervene. And Carl attaches no legal theory to his assertion. To the extent this assertion is intended to be an argument, it is therefore waived. *Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005) ("[A]n argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument." (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004))).

validity," and that Stefanie and John filed no such motion. But it is not at all clear to us that the order encompassed Stefanie and John's argument: They were not arguing that the statute was invalid or could not be applied to them — instead, they were arguing about the proper legal standard when applying the statute to this case. Stefanie and John included their proffered standard in their hearing brief and further pressed their argument at the beginning of the hearing. At no time during the hearing did Carl express that Stefanie and John's argument should have been made earlier in a separate motion according to the court's prior order.

Carl's argument that he would have undertaken different discovery or questioning had he known that Stefanie and John were going to raise a constitutional argument is unconvincing. At the pre-trial hearing Carl conceded that he was not seeking custody in the alternative. Given this concession it is unclear why extra discovery would have been helpful, and Carl does not clarify.[12] Additionally Stefanie and John raised their constitutional argument in their hearing brief and again before any testimony began; Carl had the opportunity to cross-examine Stefanie on her health and reasoning process, but apparently chose not to do so. Instead Carl testified to his view of Stefanie's medical issues and surmised that her health affected her judgment.

We therefore conclude that Stefanie and John did not waive their constitutional argument.

---

[12]     *See Osterkamp*, 235 P.3d at 185 ("[I]n order to overcome the parental preference in an initial custody contest between a parent and a non-parent[,] a non-parent must show by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent." (alteration omitted) (quoting *Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004)) (internal quotation marks omitted)).

## B.    Third-Party Visitation

Our seminal third-party visitation decision is *Evans v. McTaggart*.[13]  The statute at issue in *Evans*, AS 25.20.060, allows a trial court to order visitation with "a grandparent or other person if that is in the best interests of the child" during a custody dispute between the parents.[14]  If a grandparent has not already sought visitation during a custody dispute under AS 25.20.060 (or changed circumstances justify reconsidering a grandparental visitation determination made under AS 25.20.060), the statute at issue in this case, AS 25.20.065, allows a grandparent to petition at any time for "an order establishing reasonable rights of visitation" if (1) "the grandparent has established or attempted to establish ongoing personal contact with the child" and (2) "visitation by the grandparent is in the child's best interest."[15]  For Stefanie and John's as-applied challenge, there is no meaningful difference between the two statutes.

In *Evans* we concluded that AS 25.20.060(a) was not facially unconstitutional.[16]  But we also gave "a narrowing construction to AS 25.20.060 so . . . it need not be unconstitutional as applied."[17]  To give "special weight . . . to a fit parent's

---

[13]    88 P.3d 1078.

[14]    AS 25.20.060(a).    Neither Stefanie nor John has ever sought a custody order regarding their children.

[15]    *See* AS 25.20.065(a)-(b).

[16]    88 P.3d at 1089 ("The statute, as we construe it, does not permit any person at any time to seek visitation rights.  Visitation rights can only be sought in a pending case concerning child custody.  Further, although the statute permits a court to provide for visitation based on the best interests of the child 'by a grandparent or other person' we construe the latter phrase to be limited to third parties who have a significant connection to the child.").

[17]    *Id.*

*determination* as to the desirability of visitation with third parties," we "impos[ed] on the third person [seeking visitation] the burden of proving [by clear and convincing evidence] that *visitation* by the third person is in the best interests of the child . . . ," adding that "[t]his would provide effective protection for a parent's *choice*, except where the choice is *plainly contrary* to a child's best interests."[18]   We also stated a second version of the standard:  "[T]he trial court should determine by clear and convincing evidence whether it is in the best interests of [the child] that visitation with the [third parties] *be provided*."[19]   We concluded by stating a third version of the standard:  "[O]n remand the court should determine whether [the mother's] *parental preference* as to [her son's] visitation has been *overcome* by clear and convincing evidence that it is in [her son's] best interests that he visit with the [third parties]."[20]

Later cases applying *Evans* did not clarify the standard.  In 2010 we stated in the introduction to *Osterkamp v. Stiles* that "[the third party] did not prove by clear and convincing evidence that it would be in [the child's] best interests for *the court to order* visitation *over* [*the mother's*] *objection*."[21]   The title to the opinion section analyzing third-party visitation restated the same conclusion:  "[Third Party] Did Not Prove By Clear And Convincing Evidence That It Would Be In [Child's] Best Interest To *Order* Visitation *Over* [*Mother's*] *Objection*."[22]   However in the opinion section resolving the visitation issue, we stated a different, apparently simpler, standard:

---

[18]   *Id.* (emphasis added).

[19]   *Id.* at 1090 (emphasis added).

[20]   *Id.* at 1091 (emphasis added).

[21]   235 P.3d 178, 181 (Alaska 2010) (emphasis added).

[22]   *Id.* at 190 (emphasis added).

We held in *Evans* that to obtain visitation over the objection of a legal parent, a third party must show by clear and convincing evidence that *visitation* is in the child's best interests. . . .

In *Evans*, we noted the statement from the plurality in the United States Supreme Court's decision *Troxel v. Granville*[23] that special weight must be given to a fit *parent's determination* as to the desirability of visitation with third parties. We concluded that a presumption of parental fitness to determine what is in a child's best interests could be ensured by requiring that a third party prove "by clear and convincing evidence" that *such visitation* "is in the best interests of the child." The result of establishing this heightened standard, we concluded, was to "provide effective protection for a *parent's choice*, except where the choice is *plainly contrary* to a child's best interests."[24]

We then restated the first, more specific standard: "[I]t is a close question whether it would be in [the child's] best interests to *order* visitation with [the third party] *over* [*the mother's*] fervent *objections*."[25] Restating our conclusion that "special consideration must be given to a fit parent's determination regarding the desirability of visitation with third parties," we articulated a third, entirely new standard: "[W]e find that [the third party] did not meet his burden to prove by clear and convincing evidence that [*the mother's*] *preference* that he no longer have a relationship with [the child] is *plainly contrary* to the child's best interests."[26] In footnotes we also twice restated the standard a fourth way:

---

[23] 530 U.S. 57 (2000).

[24] *Osterkamp*, 235 P.3d at 190 (emphasis added) (footnotes omitted) (quoting *Evans*, 88 P.3d at 1089).

[25] *Id.* (emphasis added).

[26] *Id.* at 191 (emphasis added).

Psychological parent status . . . can help a third party prove . . . that it would be in the child's best interests *to grant visitation* to a third party. . . . [T]he parental preference may only be overcome if it is determined, by clear and convincing evidence, that it would be in the best interests of the child to *award* third party *visitation*.[27]

In our 2013 *Hawkins v. Williams* decision, the section of the opinion analyzing third-party visitation is entitled: "The Superior Court Properly Required [The Grandmother] To Prove That *Visitation* Was In The Children's Best Interests By Clear And Convincing Evidence."[28] In line with this simple standard we restated *Evans*'s holding as "a grandparent seeking visitation must bear 'the burden of proving that *visitation* is in the best interests of the child by clear and convincing evidence.' "[29] Later in the opinion, we again repeated this simple standard: "The [superior] court correctly required [the grandmother] to show that *visitation* was in the best interests of the children by clear and convincing evidence."[30] But we added: "Any visitation order infringes on a parent's due process right to make decisions regarding 'the care, custody, and control' of a child. It follows that a parent can oppose a petition for court-ordered visitation *without objecting to all types of visitation* with the third party."[31] We also approved a

---

[27]     *Id.* at 184 n.17, 191 n.54 (emphasis added).

[28]     314 P.3d 1202, 1204 (Alaska 2013) (emphasis added). The statute at issue in *Hawkins* was AS 25.20.065, the same statute Carl invoked in this case. *See id.*

[29]     *Id.* at 1204-05 (alterations omitted) (emphasis added) (quoting *Evans*, 88 P.3d at 1089).

[30]     *Id.* at 1205 (emphasis added).

[31]     *Id.* (footnote omitted) (emphasis added).

second standard by ultimately "conclud[ing] that the superior court did not abuse its discretion when it determined that it would not be in the best interests of the children to have *court-ordered visitation* with [their grandmother]."**32**

In all three cases we stated that a third party seeking visitation must prove by clear and convincing evidence *both* that (1) only visitation with the third party *generally* — not court-ordered — is in the child's best interests and (2) *court-ordered* visitation *specifically* is in the child's best interests. In the two older — and more in-depth — cases, we stated in several different iterations that *court-ordered* visitation *contrary to the parent's preferences* must be proven, by clear and convincing evidence, to be in the child's best interests.

## C. The Correct Legal Standard

In determining the correct third-party visitation legal standard, it is helpful to understand the purpose underlying its creation. In *Evans* we stated this purpose as giving "special weight . . . to a fit parent's *determination* as to the desirability of visitation with third parties"**33** and "provid[ing] effective *protection for a parent's choice*, except where *the choice* is *plainly contrary* to a child's best interests."**34** Although in *Hawkins* we did not directly state the most specific standard — that *court-ordered* visitation *contrary to the parent's preferences* must be proven to be in the child's best

---

**32**    *Id.* at 1206 (emphasis added).

**33**    88 P.3d at 1089 (emphasis added); *accord Osterkamp*, 235 P.3d at 190-91 (emphasis added).

**34**    *Evans*, 88 P.3d at 1089 (emphasis added); *accord Osterkamp*, 235 P.3d at 190-91 (emphasis added).

interests — our recognition in that case that a visitation order infringes upon a parent's constitutional rights even if the parent is not opposed to some types of unmandated visitation with a third party[35] is in line with this purpose.

The federal basis for Alaska's legal standard verifies this purpose. In *Troxel v. Granville* the U.S. Supreme Court addressed the clash between a third-party visitation statute and parents' substantive due process rights to the care, custody, and control of their children.[36] Based on these constitutional rights, the Washington Supreme Court had found facially unconstitutional a state statute "permit[ting] 'any person' to petition a superior court for visitation rights 'at any time[]' and authoriz[ing] [the] court to grant such visitation rights whenever 'visitation may serve the best interest of the child.' "[37] The U.S. Supreme Court's four-person plurality opinion declined to rule on the statute's facial constitutionality but ultimately affirmed the Washington Supreme Court, stating that the statute was unconstitutional as applied for several reasons.[38]

First, the trial court had not found that the mother was unfit — important because "there is a presumption that fit parents act in the best interests of their children."[39] Second, although the mother was apparently fit, the trial court had given "no

---

[35]     *See Hawkins*, 314 P.3d at 1205.

[36]     530 U.S. 57, 65 (2000) (plurality opinion).

[37]     *Id.* at 60 (plurality opinion) (alteration omitted and alterations added) (quoting WASH. REV. CODE § 26.10.160(3) (1994 & Supp. 1996)).

[38]     *See id.* at 67-74 (plurality opinion).

[39]     *Id.* at 68 (plurality opinion); *see also id.* at 68-69 (plurality opinion) ("[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of
(continued...)

special weight at all to [her] determination of her daughters' best interests" and "[m]ore importantly," the trial court "appear[ed] . . . [to] appl[y] exactly the opposite presumption" by "presum[ing] the grandparents' request should be granted unless the children would be 'impact[ed] adversely.' "[40]  Third, the mother had never sought to entirely cut off visitation.[41]  Instead the dispute originated because the mother had sought to limit the grandparents' visitation with the children to one short, non-overnight visit per month and special holidays.[42]  And the mother had conceded in court that "grandparent visitation is in the best interest of the children."[43]  According to the plurality the problem with the trial court's approach to the case was that:

> this case involves nothing more than a simple disagreement between the . . . Superior Court and [the mother] concerning her children's best interests. . . . [T]he Due Process Clause does not permit a State to infringe on the fundamental right

---

**39**    (...continued)
that parent's children.").

**40**    *See id.* at 69 (plurality opinion) (last alteration in original); *see also id.* (plurality opinion) ("In reciting its oral ruling . . . , the Superior Court judge explained: . . . . 'I think in most situations a commonsensical approach is that it is normally in the best interest of the children to spend quality time with the grandparent, unless . . . there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children.' " (alteration omitted)).

**41**    *Id.* at 71 (plurality opinion).

**42**    *Id.* (plurality opinion).

**43**    *Id.* (plurality opinion) ("The Superior Court gave no weight to [the mother's] having assented to visitation even before the filing of any visitation petition or subsequent court intervention.  The court instead rejected [the mother's] proposal and settled on a middle ground . . . . Significantly, many other States expressly provide by statute that courts may not award visitation unless a parent has denied (or unreasonably denied) visitation to the concerned third party.").

of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made.[44]

Two justices concurred.[45] Justice Souter stated that he would affirm the Washington Supreme Court's decision finding the statute facially unconstitutional "because the state statute authorizes any person at any time to request (and a judge to award) visitation rights, subject only to the State's particular best-interests standard."[46] After noting that no party had argued that the U.S. Supreme Court's substantive due process cases were wrongly decided, Justice Thomas "agree[d] with the plurality that [the] Court's recognition of a fundamental right of parents to direct the upbringing of their children resolves this case" because a prior U.S. Supreme Court decision held that "parents have a fundamental constitutional right to rear their children, including the right to determine who shall educate and socialize them."[47]

All six justices agreed that the application of a best interests standard alone is insufficient to adequately protect parental constitutional rights.[48] Five justices agreed that this is true even when it is a grandparent seeking visitation.[49]

---

[44] *Id.* at 72-73 (plurality opinion).

[45] *See id.* at 75-79 (Souter, J., concurring), 80 (Thomas, J., concurring).

[46] *Id.* at 76-77 (Souter, J., concurring).

[47] *Id.* at 80 (Thomas, J., concurring).

[48] *See id.* at 67-70, 72-73 (plurality opinion); *id.* at 76-78 (Souter, J., concurring), 80 (Thomas, J., concurring).

[49] *Compare id.* at 67-70, 72-73 (plurality opinion) ("[T]he decision whether . . . an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. . . . [T]his case[, stemming from a grandparental visitation petition,] involves nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children's best interests."),

(continued...)

With this basis for the third-party visitation legal standard in mind, we hold that a third party seeking court-ordered visitation with a child, including a grandparent seeking an order under AS 25.20.065, must prove by clear and convincing evidence that it is detrimental to the child to limit visitation with the third party to what the child's otherwise fit parents have determined to be reasonable. We believe this standard will ensure that parental preferences are adequately protected while still allowing a court to override those preferences when they are so clearly contrary to a child's best interests that they are detrimental to the child.

## D.     This Case

In its visitation order the superior court stated that a grandparent must prove by clear and convincing evidence that "visitation" is in the child's best interests. But the superior court found by clear and convincing evidence both that (1) visitation with Carl is in the children's best interests and (2) "a visitation *order* is necessary to ensure that Carl actually visits his grandchildren." (Emphasis added.) The court also later found "that it is unlikely . . . visitation will improve or even occur unless there is a visitation order in place." Thus it appears that the superior court found by clear and convincing

---

**49**     (...continued)

*and id.* at 80 (Thomas, J., concurring) (stating that he would apply strict scrutiny to any interference with the "fundamental right of parents to direct the upbringing of their children" and that "[h]ere, [in this grandparental visitation case,] the State of Washington lacks even a legitimate governmental interest—to say nothing of a compelling one"), *with id.* at 76-79 (Souter, J., concurring) (stating that he would affirm the Washington Supreme Court's decision finding the statute facially unconstitutional "because the state statute authorizes *any person* at any time to request (and a judge to award) visitation rights, subject only to the State's particular best-interests standard," adding, "It would be anomalous . . . to subject a parent to any individual judge's choice of a child's associates from *out of the general population* merely because the judge might think himself more enlightened than the child's parent." (emphasis added)).

evidence that court-ordered visitation is in the children's best interests.[50]  This legal standard ignored Stefanie and John's parental preferences, and its application violated their constitutional rights.

The facts of this case are illustrative of how violations can occur when parental constitutional rights are inadequately considered.  Carl requested two weeks of "unfettered" visitation, but quickly aligned his visitation requests with the parents' preferences by removing Simone from the equation, requesting less time, and requesting only supervised visitation during the day — at least at the initiation of visitation.  The superior court found the parents to be fit, and did not find unreasonable any of the parents' restrictions nor any history of unreasonable visitation denial.  Instead the court found "troubling" Carl's failure to understand why Stefanie and John did not want their children around Simone, and stated that Stefanie and John "would be remiss" if they had failed to restrict Simone, her family, and her friends' access to the children.  But the court still ordered visitation over the parents' objections.

---

[50]     Stefanie and John argue that although the superior court found by clear and convincing evidence that a court order was necessary to ensure visitation between Carl and the children, this finding was not the basis for the order.  They argue that the court instead ordered visitation because Stefanie and John conceded that visitation with Carl generally would be in their children's best interests.  The court made a point of twice finding in its visitation order that an order was necessary to effectuate visitation, but it also appeared to assume from very early in the proceedings that it would issue an order, repeatedly questioning Stefanie and John's "philosophical" objections to one.  And in its order the court reiterated its perception that the non-issuance of an order would be an "illusory freedom."  Regardless, the highest standard possibly applied by the court — that *court-ordered* visitation was in the children's best interests — was insufficient to protect Stefanie and John's parental constitutional rights.  We do not need to resolve whether the court's order was based upon a different but still insufficient standard.

Assuming visitation with grandparents would be beneficial to any child as long as nothing "weird" or "detrimental" was happening,[51] the court reprimanded both the parents and the grandparent for the recent poor communication between the children and Carl and found that a visitation order was necessary to ensure that visitation with Carl actually occurred. The court's wording reveals its *sole* focus — the children's best interests, as determined by the court, not the parents:

> But at some point the best interests of the children have to return to the forefront. That can only be accomplished by the parents setting aside their anger at Carl and facilitating the grandparent relation.
>
> . . . [T]he obligations of parenthood require compromise when compromise is necessary to achieve what is in the best interests of the children – here the restoration and continuation of a relationship with Carl.
>
> . . . The court will allow the parents to continue to play the primary role in protecting their children and deciding how that needs to be done. Only if they act unreasonably will the

---

[51]  For example, the court stated: "[W]hy would it ever be in a child's best interest not to have a grandparent relationship? . . . [I]f the grandparent .  . [is] taking care of [a grandchild] responsibly[,] [w]hen would it ever be detrimental to a child to have a grandparent?" We note the similarity between the superior court's statements and those the *Troxel* plurality condemned. *See Troxel*, 530 U.S. at 68-70 (plurality opinion) ("In reciting its oral ruling . . ., the Superior Court judge explained: '. . . I think in most situations a commonsensical approach is that it is normally in the best interest of the children to spend quality time with the grandparent, unless . . . there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children.' . . . In effect, the judge placed on . . . the fit custodial parent[] the burden of *disproving* that visitation would be in the best interest of her daughters. . . . The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters." (alteration omitted) (emphasis in original) (citation omitted)).

court intervene to ensure that the grandchildren have suitable access to Carl.

The court's statements that it would "allow the parents to continue to play the primary role in protecting their children" and that it was "willing to give the parents an opportunity to demonstrate that they [would] permit reasonable visitation" between the children and Carl — despite the lack of evidence that they ever unreasonably denied such visitation — is precisely the type of state interference with fit parents' care, custody, and control of their children that the *Troxel* plurality and Justice Thomas's concurrence found unconstitutional.[52]

## E. Carl's Narrow-Tailoring Argument

Carl argues that the narrow fashioning of the visitation order itself precludes finding it unconstitutional. The superior court apparently agreed, stating:

> Once it has determined that visitation is in the best interests of a child, the court is not entirely free to impose "reasonable rights of visitation . . . ." . . . [T]hey must be narrowly fashioned to protect the parent's rights . . . . By fashioning only narrowly tailored rights or conditions of visitation, the court takes care to give the requisite "special weight" to the parents' determination as to the desirability of visitation. (Footnotes omitted.)

But a court cannot ignore parental rights when issuing an order and *then* cure the order's unconstitutionality by considering parental rights when determining its

---

[52] We likewise note that the court's response to Stefanie's testimony that during visitation she would want Carl to keep the children's sugar intake minimal — "I mean, you got to let the guy give the kid a bowl of ice cream" — is exactly the type of unconstitutional judicial interference *Troxel* warned against. *See Troxel*, 530 U.S. at 68-69 (plurality opinion) ("[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").

terms. As we explicitly stated in *Hawkins*: "*Any* visitation order infringes on a parent's due process right to make decisions regarding the 'care, custody, and control' of a child. It follows that a parent can oppose a petition for court-ordered visitation without objecting to all types of visitation with the third party."[53] The superior court's actions in this case were directly contrary to our statement in *Hawkins*: Subjecting parents to a court's ongoing oversight and threat of intervention is in itself an infringement on parental due process rights. Doing so without any safeguarding of those rights is unconstitutional. "[A]llow[ing] the parents to continue to play the primary role" in their children's lives by setting only the restriction that the ordered visitation be "reasonable," as the superior court did in this case, is an insufficient after-the-fact substitution for not ordering visitation in the first place. The narrow tailoring of the visitation order does not negate its unconstitutionality.[54]

## F.     Dismissing The Visitation Petition

The superior court found the parents were fit and did not find any of the parents' visitation restrictions unreasonable nor any history of unreasonable visitation denial. Instead, the court stated that Stefanie and John "would be remiss not to restrict the access of [Simone, her family, and her friends] to [the children]." We hold as a matter of law that, given these findings, Carl is unable to prove by clear and convincing evidence that it is detrimental to the children to limit their visitation with Carl to what

---

[53]     314 P.3d 1202, 1205 (Alaska 2013) (emphasis added) (footnote omitted) (quoting *Troxel*, 530 U.S. at 66).

[54]     Carl argues that a narrowly fashioned court order is constitutional because this court narrowly reads *statutes* to avoid their unconstitutionality. This argument ignores binding precedent in favor of a broad, inapplicable canon of statutory construction: Court orders are not statutes. And a trial court cannot simply circumscribe the terms of an order in lieu of applying the legal standard determining whether such an order could constitutionally issue.

Stefanie and John have determined to be reasonable.[55] Because the superior court's findings preclude the possibility that a constitutional visitation order could be entered on the current record in this case, we dismiss Carl's visitation petition rather than remanding for further proceedings after more than two years of litigation in this case.[56]

## V. CONCLUSION

Having already VACATED the grandparent visitation order, we DISMISS the petition for grandparent visitation.

---

[55] *See Osterkamp v. Stiles*, 235 P.3d 178, 183-84 (Alaska 2010) ("Whether factual findings are sufficient to support an award of custody [or visitation] to a third party is a legal issue to which we apply our independent judgment." (quoting *J.W. v. R.J.*, 951 P.2d 1206, 1209 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 n.34 (Alaska 2004)) (internal quotation marks omitted)).

[56] *See id.* at 190 & n.47 ("Because this case already has a protracted history, because the parties need finality, and because Ken presented his case for visitation to the superior court, we resolve Ken's claim for visitation on the merits rather than remand for further proceedings.") (citing *In re Estate of Johnson*, 119 P.3d 425, 436 n.43 (Alaska 2005); *State v. Kenaitze Indian Tribe*, 83 P.3d 1060, 1071 (Alaska 2004)). *See also In re Estate of Johnson*, 119 P.3d at 436 n.43 ("Due to the lengthy delays in this case, we are reluctant to remand the case for further proceedings."); *Kenaitze Indian Tribe*, 83 P.3d at 1071 ("[G]iven the long delays in this litigation . . . we are reluctant to remand to the superior court to carry out the same review that we have already conducted. We therefore think it is better in this case for us to consider the merits . . ., rather than remand to the superior court, with the potential for further appeals.")).

Stefanie and John also argue that the Alaska Constitution's due process and privacy clauses provide equal or greater protection of their right to make decisions regarding the care, custody, and control of their children than the U.S. Constitution and that there was inadequate evidence supporting the court's finding that an order was necessary to ensure visitation between Carl and the children. Because we conclude that the superior court's findings preclude the possibility that a constitutional visitation order could be entered in this case, we do not need to address these arguments.