NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

ADDY S., )
          )  Supreme Court No. S-17427
     Appellant, )
          )  Superior Court No. 3PA-17-00081 CN
  v. )
          )  MEMORANDUM OPINION
STATE OF ALASKA, DEPARTMENT )   AND JUDGMENT[*]
OF HEALTH & SOCIAL SERVICES, )
OFFICE OF CHILDREN'S SERVICES, )  No. 1755 – February 26, 2020
          )
     Appellee. )
_____ )

Appeal from the Superior Court of the State of Alaska, Third Judicial District at Palmer, Daniel Schally, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Stowers, Maassen, and Carney, Justices. [Bolger, Chief Justice, not participating.]

## I.  INTRODUCTION

An Indian child's mother appeals termination of her parental rights. She contends that, because the superior court relied on testimony provided by an improperly

_____

[*]  Entered under Alaska Appellate Rule 214.

qualified expert witness, the court erred in concluding that returning the child to her custody would result in serious harm. She also contends that the court erred by adopting the guardian ad litem's (GAL) written closing argument as its own findings of fact and conclusions of law, and by failing to expressly identify the burden of proof applicable to its finding that the Office of Children's Services (OCS) made active efforts to prevent the family's breakup.

We conclude that the superior court did not abuse its discretion by qualifying the expert witness and therefore did not clearly err by finding the child was at risk of serious harm if returned to the mother's care. We also conclude that the court did not err by determining OCS made active, but unsuccessful, efforts to prevent the family's breakup. We therefore affirm the superior court's termination decision.

## II. FACTS AND PROCEEDINGS

### A. Family Background And Removal

Addy S.[1] is the mother of Daniel, an Indian child as defined by the Indian Child Welfare Act (ICWA).[2] Addy was developmentally delayed as a child and experienced neglect and extensive physical, psychological, and sexual abuse. Addy later was diagnosed with fetal alcohol spectrum disorder (FASD), post-traumatic stress disorder (PTSD), major depressive disorder, and borderline intellectual functioning. As a consequence of her inability to provide for her own well-being, Addy has had a guardian for much of her adult life. The superior court terminated Addy's parental rights

---

[1]     We use pseudonyms to protect the family's privacy.

[2]     *See* 25 U.S.C. § 1903(4) (2018) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . ."). Daniel is an Indian child because he is a member of the Curyung tribe.

to her first child, Astrid, following an August 2018 termination trial; we affirmed the termination on appeal.[3]

Daniel was born in June 2017. The day after Daniel's birth, OCS received a report that Addy had neglected Daniel, that she was talking about leaving the hospital against medical advice, and that Cameron, Daniel's father, had been in an altercation at the hospital. An OCS caseworker investigated; the caseworker later testified at the child in need of aid (CINA) adjudication trial that she was concerned by Addy's guarded speech; noncompliance with her case plan in Astrid's proceedings, including her decision to relinquish her parental rights to Astrid;[4] and by Addy's claims that she had received prenatal care but could not recall where that had occurred.

The OCS caseworker also later testified to having had concerns that Cameron was a registered sex offender and that he was verbally abusive to Addy, yelling at her and calling her demeaning names. Addy had warned the caseworker that Cameron likely would become verbally aggressive when OCS contacted him, but she initially was unwilling to disclose any information about his sex offender status. The caseworker's investigation determined that Cameron had been convicted of sexual abuse of a minor. The record reflects that Cameron was charged with seven counts of sexual abuse of a minor; he pleaded guilty to one count of attempted sexual abuse of a minor and the other charges were dropped.

---

[3] *See Addy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-17257, 2019 WL 3216807, at \*5, \*8 (Alaska July 17, 2019). Addy's early life and OCS's efforts involving her first child are more fully detailed in that decision. *See id.* at \*1-4.

[4] Astrid's foster parents had sought to adopt her; Addy consented, but later withdrew her consent. *Id.* at \*3.

Based on this investigation, OCS removed Daniel from Addy's and Cameron's custody and filed an emergency petition to adjudicate Daniel a child in need of aid.[5]

**B.      Adjudication, Termination, And Appeal**

The superior court held adjudication hearings in February, March, and April 2018. In addition to the above-noted OCS caseworker's testimony, the court heard from Jaime Browning, a former OCS caseworker whom, at OCS's request and without objection, the court qualified as an expert in child safety, child welfare, mental health, domestic violence, substance abuse, and child development. The court admitted Browning's report into evidence. The court adjudicated Daniel a child in need of aid under AS 47.10.011(6) (physical harm), (8) (mental injury), and (9) (neglect). Describing Browning's testimony as "compelling," the court found by clear and convincing evidence that placement with either parent likely would result in serious emotional or physical harm to Daniel.[6]

OCS petitioned to terminate Addy's and Cameron's parental rights in June 2018. The superior court held a termination trial over seven days in December 2018 and January 2019. Browning was again offered by OCS as an expert in child safety, child development, mental health, substance abuse, and domestic violence.

---

[5]      *See* AS 47.10.142(a), (c) (authorizing OCS to take emergency custody of child under enumerated conditions with direction to petition court with allegations that child is in need of aid); AS 47.10.011 (enumerating circumstances in which "court may find a child to be a child in need of aid"); CINA Rule 6(b) (providing procedural structure for emergency custody petition with court order declaring child in need of aid).

[6]      *See* CINA Rule 10(c)(4)(B) (requiring qualified expert witness testimony supporting finding "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child").

Browning testified about her relevant experience. She began working part time for a child abuse and neglect prevention agency in Kansas. She also did home visits with "seriously and chronically mentally ill" individuals, "try[ing] to have them become more independent" by helping them work on goals, skill development, and behavioral management. Browning next worked part time in Oregon as "floor staff" at "an adolescent, residential, dual diagnosis treatment center"[7] for approximately nine months. She then moved to Alaska and worked at OCS for nearly 12 years, beginning as a family services caseworker. She spent just over a year working on the therapeutic drug court, again working with individuals who had substance abuse and psychiatric issues, including anxiety, depression, and "managed" bipolar disorder. She then was a family services supervisor for approximately two-and-a-half years and an ICWA family services supervisor for one year.

Browning testified that she had left OCS and opened a private practice as an expert witness testifying in CINA/ICWA and family law cases; she estimated that between OCS and her private practice she had been qualified as an expert witness "well over a hundred times." She recalled having been qualified as an expert in "child safety or child welfare or child development as it pertains to things like mental health [or] substance abuse"; "low-level physical abuse, low-level sexual abuse"; and "intimate partner violence, domestic violence."

Browning testified that she had completed supplemental training in addition to her work experience; over the previous two years she had "a lot of training" regarding the impact of abuse, maltreatment, and neglect on children. Browning said she had

---

[7] Dual diagnosis refers to coexisting psychiatric and substance abuse disorders. *See Diagnoses, Dual (Psychiatry)*, NAT'L INST. HEALTH, NAT'L CTR. FOR BIOTECH. INFO., https://www.ncbi.nlm.nih.gov/medgen/?term=dual_diagnosis (last accessed Feb. 4, 2010).

participated in two other formal training courses while at OCS. Browning recounted her expertise in mental health issues as including working with both outpatient and inpatient mental health agencies for youth and adults, regular OCS training, and education. She said this experience helped her with "understand[ing] the assessments" and "recognizing and responding to people who may have a mental health issue [and] how to interact and recommend for treatment."

Browning testified that just prior to the termination trial she had completed intimate partner violence education involving four weeks of online training, "lots of reading materials, and . . . two days of . . . in-house residence." She said she also had participated in "volunteer training" through a domestic violence shelter. Browning noted OCS's "regular routine trainings" and her education through other domestic violence training to "understand the recommendations, the treatment, . . . [and] any assessments."

Cameron did not object to Browning's qualification as an expert, but Addy objected on the grounds that Browning: (1) had not established familiarity with the customs and practices of Addy's tribe; (2) provided no evidence she had engaged in peer-reviewed research in the areas for which OCS sought to qualify her as an expert; (3) was not licensed "to do diagnoses or assessments regarding mental health"; and (4) had "not done any research or graduate education regarding the field of domestic violence." In relevant part, the GAL responded that Browning was not "being called to testify to diagnose or prescribe anything specific for the parents" and that she was "not going to actually provide . . . diagnoses of the parents." The GAL indicated that Browning's testimony instead would "review the impact of others' diagnoses of the parents, the impact on parenting and on the child."

The superior court qualified Browning over the objections, noting that she had been "recognized as an expert . . . in this very case just a few months ago." The court specifically qualified Browning in the areas of child development, child safety,

mental health, substance abuse, and intimate partner violence. Browning's adjudication testimony and report also were later admitted into evidence.

The superior court terminated Addy's and Cameron's parental rights to Daniel in February 2019.[8] The court adopted the GAL's written closing argument as its own findings and conclusions; the written closing argument stated that OCS had proved beyond a reasonable doubt that returning Daniel to Addy's custody likely would result in serious emotional or physical damage to the child. The GAL's argument specifically pointed to Browning's expert report and trial testimony that: "[Addy] simply does not have the skills to use sound judgment to ensure that her child's emotional and physical needs are met"; Addy's own "childhood trauma has created some mental health concerns that impact her ability to safely parent"; Addy's "inability to problem solve, her poor judgment, poor memory retention . . . contribut[e] to the dangers posed to a child in [Addy's] care"; and "a lack of attachment between [Daniel] and his parents" and a

---

[8] Under ICWA and relevant Alaska CINA statutes and rules, parental rights to an Indian child may be terminated at trial only if OCS shows:

(1) by clear and convincing evidence that: (a) the child has been subjected to conduct or conditions enumerated in AS 47.10.011 (CINA Rule 18(c)(1)(A)); (b) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent (CINA Rule 18(c)(1)(A)(i) - (ii)); (c) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family (CINA Rule 18(c)(2)(B)); and

(2) beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child (CINA Rule 18(c)(4)); and

(3) by a preponderance of the evidence that the child's best interests would be served by termination of parental rights (CINA Rule 18(c)(3)). *See* AS 47.10.011, 47.10.080(o), 47.10.088; 25 U.S.C. § 1912(d), (f) (2018).

"failure to understand [Daniel's] needs" both "impact[] his development and emotional well-being." The written closing argument includes a section describing how OCS made timely active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the family; the section notably did not state that OCS had proved its active efforts by any particular burden of proof. In a general concluding statement, the written closing argument "urge[d] the [superior court] to find that [OCS] ha[d] met its burden of proof as to all elements required."

Addy appeals the superior court's order terminating her parental rights on two grounds. She first contends Browning lacked the education, training, or experience necessary to testify about parental mental health or domestic violence, and the court therefore erred by concluding OCS had established beyond a reasonable doubt that returning Daniel to Addy's custody would result in serious harm to the child. Addy also contends the court erred by adopting the GAL's written closing argument as its findings of fact and conclusions of law and by failing to expressly identify the burden of proof — clear and convincing evidence — by which OCS was required to prove it had made active efforts to prevent the family's breakup.

## III.   STANDARD OF REVIEW

"A trial court's decision to admit expert testimony is reviewed for an abuse of discretion."[9] "[W]hether an expert's testimony presented at trial is sufficient pursuant to ICWA is a legal question, which we review de novo."[10] "A trial court's determination that a parent's continued custody of a child will likely result in the child suffering serious

---

[9]     *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 962 (Alaska 2013).

[10]     *Marcia V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009).

emotional or physical damage is a factual finding that we review for clear error."[11] "Factual findings are clearly erroneous if a review of the entire record in the light most favorable to the prevailing party leaves us with a definite and firm conviction that a mistake has been made."[12] We review de novo whether the trial court applied the correct burden of proof.[13]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Qualifying Browning As An Expert Witness And Did Not Clearly Err By Determining That Continued Custody Likely Would Result In Serious Physical Or Emotional Damage To Daniel.

ICWA provides that a parental rights termination must include a determination beyond a reasonable doubt, supported by evidence "including testimony of qualified expert witnesses," that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[14] The Bureau of Indian Affairs' December 2016 Guidelines for Implementing the Indian Child Welfare Act clarifies that an expert qualified to testify to the risk of serious emotional or physical damage to a child must have expertise "beyond the normal social worker qualifications."[15] New federal regulations indicate that this specialized expertise must qualify the expert to testify to "a causal relationship between the particular

---

[11] *Thea G.*, 291 P.3d at 962.

[12] *Marcia V.*, 201 P.3d at 502.

[13] *See Hawkins v. Williams*, 314 P.3d 1202, 1204 (Alaska 2013).

[14] 25 U.S.C. § 1912(f) (2018); *see also* CINA Rule 18(c)(4).

[15] U.S. DEP'T OF THE INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 54-55 (2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf.

conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child."[16] Our recent *Eva H. v. State, Department of Health & Social Services, Office of Children's Services* decision applied the new regulations and overruled a superior court's finding because the qualified expert "drew no connections between specific conduct and the likelihood of specific harm."[17]

Addy argues that the superior court erred by determining that her custody likely would result in serious harm to Daniel because the court relied on testimony from Browning, who allegedly lacked the expertise, training, and experience necessary to qualify her as an expert in the fields of mental health and domestic violence. Addy variously argues that Browning lacked the qualifications necessary to testify as an expert in mental health, cognitive limitations, domestic violence, and anger management issues. Addy does not challenge Browning's qualification as an expert in child development and child safety. Addy's argument fails because it overgeneralizes the scope of Browning's qualification as an expert witness. Browning's testimony reflected experience in child safety and development and how parental mental illness or domestic violence may impact a child's safety and development. The superior court did not abuse its discretion by qualifying Browning to present expert witness testimony on these topics.

We have not expressly defined "normal social worker qualifications," but we have identified examples of witnesses who surpassed or might not have met the standard. For example, in *In re Candace A.* we determined two witnesses had " 'substantial education in the area of [their] specialty': master's degrees in social work, internships in relevant subject areas as required for their degrees, agency training, and

---

[16]     25 C.F.R. § 23.121(c) (2019).

[17]     436 P.3d 1050, 1056-57 (Alaska 2019).

continuing professional education," and were "well-qualified witnesses."[18] By contrast, in *Marcia V. v. State, Department of Health & Social Services, Office of Children's Services* a witness had a bachelor of science degree in Administration of Justice and seven years of OCS experience, including supervisory experience; we "require[d] further inferences" to conclude that she "ha[d] expertise beyond that of a normal social worker, or that she ha[d] substantial education regarding the effects of parental substance abuse on children," the specialized area for which she was qualified at trial.[19] In *Eva H.* we held that a witness with a bachelor's degree in political science, a law degree, 18 years of experience as a GAL in the Yukon-Kuskokwim Delta area, and experience working for Alaska Legal Services was not sufficiently qualified to testify to the "key issue" of the causal link between the parents' substance abuse and the risk of harm in returning children to the parents' care.[20]

The superior court relied on Browning's conclusions in her expert report and trial testimony that issues related to Addy's existing mental health diagnoses and existing abusive relationship with Cameron placed Daniel at risk of harm. But the court *also* relied on Browning's statements about "concerns regarding a lack of attachment

---

[18]    332 P.3d 578, 586 (Alaska 2014) (quoting *Marcia V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 201 P.3d 496, 504 (Alaska 2009) (citing Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,593 (1979))).

[19]    201 P.3d at 505.   We applied the plain error standard of review because no objection was raised at trial, and we upheld the superior court's expert witness qualification "[b]ecause it was *possible to infer*" the witness had necessary ICWA qualifications. *Id.* (emphasis added).

[20]    436 P.3d at 1052-54, 1057-58 ("[W]itnesses we have considered to be *clearly* qualified under ICWA had substantial education in social work or psychology and direct experience with counseling, therapy, or conducting psychological assessments." (emphasis in original)).

between [Daniel] and his parents," their "failure to understand [Daniel's] needs," and "the lack of frequency of contact" between Daniel and his parents as evidence that returning to Addy's custody likely would result in serious physical or emotional harm to Daniel. These statements reflect the court's reliance on Browning's expertise not in mental health or domestic violence per se, but rather in child safety and child development, including the impact of parental mental health and domestic violence issues on child safety and development. By any measure, Browning's education, training, and work experience — including 12 years at OCS as a family services caseworker, supervisor, and ICWA family services supervisor — as well as her prior experience as an ICWA expert in the areas of child neglect, child welfare, and child development, suffice to qualify her as an expert in the areas of child safety and development.[21] Browning's report and testimony regarding Addy's failure to understand Daniel's needs and the infrequency of contact and lack of relationship between Addy and Daniel were relied upon by the court and plainly supported by the record and supply more than enough evidence to conclude that the court did not clearly err in determining that returning Daniel to Addy's custody likely would result in serious physical or emotional damage.

**B.    The Superior Court Did Not Err By Finding That OCS Met Its Active Efforts Burden.**

Under ICWA "[a]ny party seeking to effect a . . . termination of parental rights to[ ] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent

---

[21]    OCS argues that by failing to object at the adjudication trial Addy waived her right to object to Browning's qualification as an expert witness at the termination trial. We do not address this argument.

the breakup of the Indian family and that these efforts have proved unsuccessful."[22] Alaska courts apply the "clear and convincing evidence" standard of proof in making active efforts determinations.[23] Federal regulations define active efforts as "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family."[24] We employ a case-by-case approach to the active efforts inquiry because " 'no pat formula' exists for distinguishing between active and passive efforts."[25] This analysis considers OCS's "involvement in its entirety."[26]

As we noted above, the superior court adopted the GAL's written closing argument rather than issuing its own written findings of fact and conclusions of law.[27] The GAL contended in its written closing argument that OCS made timely active efforts

---

[22]     *Sam M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 731, 736 (Alaska 2019) (alteration in original) (quoting 25 U.S.C. § 1912(d) (2018)).

[23]     CINA Rule 18(c)(2)(B).

[24]     *Sam M.*, 442 P.3d at 736 (quoting 25 C.F.R. § 23.2 (2019)).

[25]     *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999) (quoting *A.M. v. State*, 945 P.2d 296, 306 (Alaska 1997)).

[26]     *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268 (Alaska 2008).

[27]     We previously have held that a superior court "is permitted to adopt a party's proposed order so long as 'the [proposed] findings and conclusions "reflect the court's independent view of the weight of the evidence." ' " *Jude M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16852, 2018 WL 3471847, at *3 (Alaska July 18, 2018) (quoting *Harrelson v. Harrelson*, 932 P.2d 247, 250 n.2 (Alaska 1997)). We have no reason to believe that the adopted findings and conclusions do not reflect the court's independent judgment in this case. But we strongly advise courts in future cases to utilize written findings and conclusions rather than adopting a party's closing argument for that purpose.

to provide remedial services and rehabilitative programs designed to prevent the breakup of the family. The GAL's argument nowhere states that OCS met its active efforts burden by "clear and convincing evidence," although, as OCS notes, the argument's conclusion contends that OCS "met its burden of proof as to all elements required" under Alaska's CINA statutes and ICWA.

We have held on multiple occasions that a superior court need not expressly state the applicable standard of proof, and we normally will assume the court has applied the correct standard.[28] The record before us does not indicate that the court applied an incorrect standard, and we have no reason to believe the court was unaware or mistaken as to the correct standard. We therefore conclude that the superior court did not err by determining OCS made active, but unsuccessful, efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family.[29]

## V.    CONCLUSION

We AFFIRM the superior court's parental rights termination decision.

---

[28]    *See, e.g.*, *Wasser & Winters Co. v. Ritchie Bros. Auctioneers (Am.), Inc.*, 185 P.3d 73, 83 (Alaska 2008) ("A superior court does not need to explicitly state the standard of proof it is applying if there is no dispute about the applicable standard."); *Anchorage Police & Fire Retirement Sys. v. Gallion*, 65 P.3d 876, 883-84 (Alaska 2003) (noting we "normally assume that the trial court has applied the correct standard" and affirming on basis that nothing indicated court applied incorrect standard).

[29]    Addy does not challenge whether OCS met its active efforts burden on the merits; we therefore do not address that issue. *See Lyman v. State*, 824 P.2d 703, 706 (Alaska 1992) ("Generally, points on appeal not briefed are considered abandoned."); *see also Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 921 n.17 (Alaska 2011) (holding appellant had waived claim by failing to meaningfully develop it in brief); *Maisy W.*, 175 P.3d at 1267-68 ("[A] party waives appellate consideration of a claim by briefing it inadequately.").