*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| REBECCA CHRISTY and SAMUEL CHRISTY, | ) ) ) | Supreme Court No. S-17788 |
| Appellants, | ) ) | Superior Court No. 3PA-18-01838 CI |
| v. | ) ) | O P I N I O N |
| CHARLES CONRAD and MARCIE CONRAD, | ) ) ) | No. 7640 – February 10, 2023 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Lynda A. Limón and Randi R. Vickers, Limón Law Firm, Anchorage, for Appellants. Herbert M. Pearce, Law Offices of Herbert M. Pearce, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

When a grandparent seeks court-ordered visitation against parents' wishes, the grandparent must prove by clear and convincing evidence that it is detrimental to the child to limit visitation to what the child's otherwise fit parents have deemed reasonable. In this case the superior court granted visitation to grandparents after finding that the

children enjoyed a positive relationship "typical of a grandparent-child relationship" and that the parents' motive for cutting off contact with the grandparents was spiteful. We reverse the court's ruling. The parents' motive for ending visitation does not show that the lack of visitation is detrimental to the children. And the mere fact that children enjoy a positive or typical relationship with their grandparents does not amount to clear and convincing evidence that ending visitation is detrimental to the children. Absent such evidence, it is error to order visitation that a fit parent does not wish to allow.

## II.     FACTS AND PROCEEDINGS

### A.      Background Facts

Rebecca and Sam Christy were the paternal grandparents of the two children at issue in this case. The Christys adopted the children in 2017. Marcie and Charles Conrad were the maternal grandparents of the children prior to the adoption. This case concerns the Conrads' ability to seek visitation against the Christys' wishes.

The children's birth parents struggled with substance abuse. When the older child was born in May 2013, she and her birth mother — the Conrads' daughter — briefly lived with the Conrads. Shortly after the birth the Conrads involved OCS because they were concerned about the mother's ability to safely parent the child.

OCS took custody of the older child in July 2013. Around that time, the Conrads and Christys agreed that the child should live with the Christys on weekdays and have unsupervised visitation with the Conrads on weekends. OCS placed the child with the Christys in August 2013. This arrangement initially worked well for all parties. In May 2014 OCS began requiring supervision of the Conrads' visits because of reports that they allowed the mother unsupervised access to the child.

Shortly thereafter the relationship between the Conrads and Christys began to deteriorate. The Conrads accused the Christys of using drugs and not providing a safe

and stable home for the child. OCS investigated these claims and determined that placement with the Christys was still proper.

In April 2015 the younger child was born. A few days later OCS took custody of the younger child and placed him with the Christys. The Conrads had supervised visitation with the younger child only once or twice per month.

In February 2016 the Conrads requested a placement review hearing for both children. After a hearing the superior court affirmed OCS's decision to place both children with the Christys. In March 2016 the parental rights of the birth mother and birth father were terminated. The children's birth mother later died in 2018.

In June 2017 the Christys adopted both children. Shortly after the adoption was finalized, the Christys stopped all visitation between the children and the Conrads. The Christys did not notify the Conrads directly of their decision; the Conrads learned of the decision from OCS when they went to OCS for a scheduled visit.

## B. Proceedings

In March 2018 the Conrads filed a complaint for visitation.[1] The superior court held a trial to determine if visitation should be ordered.

At trial the Conrads described their relationship with the children as positive, noting that the children appeared excited to see them and referred to them as "Grandma" and "Grandpa." The Conrads described their supervised visits, which entailed reading to the children, playing with them, and celebrating holidays and their birthdays. The Conrads stated that they tried to see the children "as much as [they]

---

[1] After the adoption the Conrads were no longer the children's legal grandparents. AS 25.23.130(a)(1). However, the Conrads were still able to seek visitation as former grandparents because they did not intervene in the adoption proceeding. *See* AS 25.20.065(b) (providing when visitation rights of grandparents survive post-adoption); *C.L. v. P.C.S.*, 17 P.3d 769, 778 & n.35 (Alaska 2001) (applying and explaining AS 25.20.065(b)).

could" and that they sought additional visitation. The Conrads stated that they wished only to be involved as grandparents; they did not want to interfere with how the Christys were raising the children. The Conrads also emphasized the general importance of grandparents being involved in grandchildren's lives, asserting that a lack of grandparent involvement would be harmful because "[k]ids need family."

The Christys testified about why they cut off contact with the Conrads. First, the Christys expressed concerns about the Conrads disrupting their ability to parent the children. Specifically, they stated that the Conrads disregarded the boundaries they set for the children by, for example, feeding the older child dairy products despite the child's allergies. Second, the Christys testified to substantial friction between the two families. Rebecca Christy described an incident in which the Conrads visited their home and Charles Conrad "spoke about me to [the older child] in the other room in an aggressive manner," which made Rebecca feel "extremely uncomfortable." The Christys also described feeling "attack[ed]" by the Conrads' accusations — voiced both to OCS and to members of the Christys' community — that the Christys were unfit parents, including false claims that Sam Christy used synthetic marijuana. Third, the Christys stated that they felt it was their "constitutional right to choose who [their] children see and who [their] children don't see."

The Christys also put on testimony that the children were not harmed by the Conrads' absence. Rebecca testified that, after visitation stopped, the older child had not asked about the Conrads and had not asked to see them. The older child's elementary school teacher and the younger child's preschool teacher testified that the children have been doing quite well since the adoption. The older child's teacher said the Christys "were fantastic" in working with the older child and her learning disabilities. The teacher reported that the older child was "really happy" and "everything seemed really solid." The younger child's teacher said that the child has been making great progress

and is "super confident now in [his] own abilities." The teacher said she believes the younger child was "getting a lot of the things he needs at home." Additionally, a family friend of the Christys testified that visitation with the Conrads did not seem to benefit the children. Specifically, the friend testified that, after a visit with the Conrads, the older child seemed "very somber," which was "very unlike her."

## C.    The Superior Court's Order

After the trial the superior court issued a written order granting the Conrads visitation. The court applied the legal framework established in *Ross v. Bauman*, which requires that a grandparent seeking court-ordered visitation against a fit parent's wishes must establish (1) that visitation is in the child's best interests and (2) that the parent's preferred level of visitation is detrimental to the child.[2]

The superior court first ruled that visitation with the Conrads was in the children's best interests. It found that "the children enjoyed a positive relationship" with the Conrads that was "typical of a grandparent-child relationship." The court ruled that continuing this relationship was "in the children's best interests." The court also ruled that the manner in which the relationship was severed was contrary to the children's best interests, because "the children . . . [had not] anticipated" the "sudden cessation" of visits and had not received "[any] explanation . . . as to what happened to the Conrads." Finally the court ruled it was best for the children "to maintain a connection to their

---

[2]    *Ross v. Bauman*, 353 P.3d 816, 828-29 (Alaska 2015) (requiring that third parties seeking visitation must "prove by clear and convincing evidence that it is detrimental to the child to limit visitation with the third party to what the child's otherwise fit parents have determined to be reasonable"); AS 25.20.065 (allowing grandparent visitation if "(1) grandparent has established or attempted to establish ongoing personal contact with the child; and (2) visitation . . . is in child's best interests").

biological maternal side" of the family, which would only be possible through contact with the Conrads, the children's only living relatives on that side.

The court next ruled that ceasing all visitation would be detrimental to the children. This ruling rested on the court's finding that "the only reason the Christys denied visitation with the Conrads is pure spite." The court concluded that "[t]his toxic impetus is clearly detrimental to the best interests of the children."

The Christys appealed, challenging (1) an evidentiary ruling and (2) the adequacy of the superior court's findings.[3] After considering the parties' briefing and oral arguments, we issued an order reversing the superior court's grant of visitation to the Conrads. We explain our reasoning here.

## III.    STANDARD OF REVIEW

We review a court's method of admitting evidence for abuse of discretion.[4] We review factual findings under the clearly erroneous standard.[5] Whether factual findings are sufficient to support an award of visitation to a third party is a legal issue to which we apply our independent judgment.[6]

---

[3]     Shortly after filing their appeal, the Christys moved for a stay of the superior court's order pending appeal, which the superior court denied. The Christys then moved for a stay from this court, which we denied.

[4]     *See Am. Nat'l Watermattress Corp. v. Manville*, 642 P.2d 1330, 1339 (Alaska 1982) ("[O]ur cases hold that the trial judge is vested with wide discretion in controlling the order of proof. [A judge's] decision will not be upset unless an abuse of discretion is clearly shown.").

[5]     *Hawkins v. Williams*, 314 P.3d 1202, 1204 (Alaska 2013).

[6]     *Ross*, 353 P.3d at 823.

## IV. DISCUSSION

### A. Any Error In The Court's Decision Not To Admit A Recording Of Prior Testimony Was Harmless.

We first address a threshold evidentiary matter. At trial the Christys sought to introduce a compact disc (CD) containing the testimony of a now-deceased social worker, who testified at the 2016 placement review hearing about relations between the Conrads, the Christys, and the children. The superior court agreed that this testimony was admissible. Yet the court declined to admit the CD as an exhibit, telling the parties it would listen to the prior testimony by accessing it through the court system's recording archives. The Christys did not object to this approach.

On appeal the Christys argue that the superior court erred by declining to admit the testimony and suggest the court may not have actually listened to it before making its ruling. But it is clear from the record that the court deemed the testimony admissible. And we presume, absent indications otherwise, that the court listened to the audio recording.[7] The Christys' argument therefore fails.

A slight problem with the court's handling of this exhibit is that the court inadvertently excluded the testimony it contained from the record. It is best to conduct judicial business on the record and in open court.[8] Yet this rule is not ironclad. When all parties agree to the court reviewing prior testimony off the record, are on notice of

---

[7]     *See United States v. Manthei's Bondsmen*, 2 Alaska 459, 466 (D. Alaska 1905) ("When the jurisdiction of a competent court has attached, every act is presumed to have been rightly done until the contrary appears."); *see also Brigman v. State*, 64 P.3d 152, 158 n.7 (Alaska App. 2003) (collecting cases applying the presumption of regularity).

[8]     *See* Alaska R. Admin. 21(a) ("So far as practicable, all judicial business involving the trial of causes and conferences with members of the Bar or litigants shall be on the record and transacted in open court.").

what is being reviewed, and have had an opportunity to object to portions of the prior testimony, there is no need to spend precious trial time reviewing the testimony in open court. But the trial court must ensure that the prior testimony becomes part of the record to facilitate appellate review.[9]

In this case the inadvertent omission is harmless. The parties included a transcript of the prior testimony with the record on appeal, allowing us to evaluate the evidence the court considered. And the Conrads do not argue that they were denied the opportunity to object to portions of the prior testimony. Therefore this issue has no effect on the appeal.[10]

### B. There Is Insufficient Evidence To Show That Denying Visitation With The Grandparents Would Be Detrimental To The Children.

Parents have a constitutional right "to the care, custody, and control of their children."[11] This right includes the ability to determine with whom the children may have contact.[12] Grandparents have a statutory right to visitation with their grandchildren,

---

[9] *See In re P.N.*, 533 P.2d 13, 19 n.13 (Alaska 1975) ("If an appellate court does not have a complete record of what took place in the superior court it makes it difficult, and sometimes impossible, for the appellate court to exercise to its fullest extent its power and duty to review the actions of the superior court."); Alaska R. App. P. 210(a) ("The record on appeal consists of the entire trial court file, including the original papers and exhibits filed in the trial court, the electronic record of proceedings before the trial court, and transcripts, if any, of the trial court proceedings.").

[10] *See Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 142 (Alaska 2004) ("The admission of evidence, even if erroneous, is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on the court's decision.").

[11] *Ross*, 353 P.3d at 827.

[12] *Id.* at 827-29.

but this right is subordinate to parents' constitutional rights.[13]  For that reason we held in *Ross v. Bauman* that a grandparent seeking court-ordered visitation over a parent's objection "must prove by clear and convincing evidence that it is detrimental to the child to limit visitation with the third party to what the child's otherwise fit parents have determined to be reasonable."[14]  The purpose of this rule is to give "special weight . . . to a fit parent's determination as to the desirability of visitation with third parties" and to provide "effective protection for a parent's choice."[15]

The Conrads conceded that the Christys are fit parents.  To obtain court-ordered visitation against the Christys' wishes, the Conrads therefore had to prove that the Christys' decision to end visitation was detrimental to the children.  The superior court ruled that the Conrads had met their burden of showing detriment by clear and convincing evidence.  After reviewing the record, we conclude the Conrads did not meet their burden to make this showing.

The superior court's primary explanation for why terminating the children's visitation with the Conrads was detrimental was that the Christys acted out of "pure spite" when deciding to halt all visitation.  Yet a parent's motive for a decision is separate from the impact of that decision on the child.  Just as parental decisions driven by good intentions can be detrimental, parental decisions driven by spite might in some cases be beneficial, or at least harmless.  Although the court stated that the "toxic

---

[13]     AS 25.20.065; *Ross*, 353 P.3d at 828-29 (explaining interaction between grandparents' statutory rights and parents' constitutional rights).

[14]     *Ross*, 353 P.3d at 828-29.

[15]     *Id.* at 827 (emphasis omitted) (quoting *Evans v. McTaggart*, 88 P.3d 1078, 1089 (Alaska 2004)); *accord Troxel v. Granville*, 530 U.S. 57, 69-70 (2000) (explaining that parents' substantive due process rights to control their children's upbringing includes ability to control whom child interacts with).

impetus" for the Christys' decision to stop visitation was "clearly detrimental to the best interests of the children," the court did not point to any evidence that stopping visitation with the Conrads was detrimental to the children — i.e., that it would cause "injury or damage" to them.[16] The Christys' "spite" was not enough to support the court's ruling that ceasing visitation would be detrimental to the children.

On appeal the Conrads identify a number of alternative bases for the detriment ruling. The Conrads point to the superior court's finding — made in support of its separate ruling that visitation with the Conrads would be in the children's best interests — that "the children enjoyed a positive relationship with their maternal grandparents typical of a grandparent-child relationship." The Conrads argue that the sudden, permanent, and unexplained severance of this relationship was detrimental.[17] These arguments fail because they rest on assumptions rather than evidence. In custody

---

[16]     *Detriment*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (1993) ("injury or damage or something that causes it").

[17]     The Conrads argue that we should follow two other jurisdictions' lead and accord special weight to the fact that visitation was totally stopped instead of merely reduced. There are two flaws in this argument. First, neither of the two cases the Conrads cite actually accord special weight to whether visitation is totally severed — instead, the cases merely state that trial courts should "consider" the degree to which visitation is denied. *In re C.S.N.*, 14 N.E.3d 753, 757 (Ind. Ct. App. 2014) (trial courts must consider four factors, which include "whether the parent has denied visitation or has simply limited visitation"); *In re A.L.*, 781 N.W.2d 482, 488 (S.D. 2010) ("[A] court, before ordering grandparent visitation . . . must . . . consider whether the parent has completely denied visitation or simply limited visitation . . . ."). Second, the degree of restriction on the child's contact with the third party is ancillary to the inquiry under *Ross*. A fit parent's decision to limit or eliminate contact with a grandparent may only be displaced if the decision is clearly shown to be detrimental to the child. *Ross*, 353 P.3d at 828-29. In some cases, totally stopping grandparents' visitation would be detrimental to the child, whereas simply limiting visitation would not be. But the distinction is immaterial here, because the Conrads have not produced any evidence of detriment to the children.

and visitation matters we have declined to place substantial weight on broad assumptions about the importance of children having a relationship with their grandparents.[18] The Conrads failed to produce specific evidence showing that the lack of visitation with their grandparents caused or would likely cause injury or damage to the children. Instead, the unrefuted testimony of the Christys and the children's teachers was that the children had not exhibited distress about the lack of contact with the Conrads and were currently thriving. The assumption that it is generally beneficial for children to have a relationship with their grandparents is not clear and convincing evidence that denying this relationship will be detrimental to particular children.

The Conrads' emphasis on the children's need for a connection to their birth mother's side of the family rests on a similarly deficient assumption. Although having a connection with both sides of one's family is generally regarded as beneficial, there was no evidence showing that lacking this connection was "so clearly contrary" to these children's best interests that it would cause them harm.[19] Absent evidence of

---

[18]     *See, e.g.*, *Moore v. Ketah*, No. S-17325, 2020 WL 4345027, at *4 (Alaska July 29, 2020) (holding grandmother failed to establish that her grandchildren would be harmed by a lack of visitation, because she "presented no evidence on this issue" and instead relied on "the inference of detriment" from severing a grandparent-grandchild relationship); *cf. Hawkins v. Williams*, 314 P.3d 1202, 1206 (Alaska 2013) (describing assertion "that grandchildren should be allowed to visit their grandparents" as insufficient to satisfy grandparent's burden that having visitation was in the child's best interests); *Ross*, 353 P.3d at 829 n.51 (discussing Supreme Court plurality opinion rejecting assumption that grandparent-grandchild relationship is presumptively beneficial to a child).

[19]     *Ross*, 353 P.3d at 829.

detriment to the children, it was error for the superior court to substitute its own judgment for that of the parents.[20]

The Conrads argue OCS's and the guardian ad litem's prior support for their visitation with the children during the 2016 placement review hearing is evidence that denying this visitation would be detrimental.[21] OCS has a duty to offer "reasonable visitation" between a child in its custody "and the child's parents, guardian, and family" but can deny visitation based on clear and convincing evidence that it is not in the child's best interests.[22] But, as discussed above, *Ross* requires a clear and convincing showing of *detriment*. There is a meaningful difference between an action being contrary to the children's best interests and it being harmful to them.[23] Even when the recommendations to increase visitation are considered together with the court's finding that the children's relationship with the Conrads was "typical" and "positive" and their only connection to

---

[20] *Troxel v. Granville*, 530 U.S. 57, 72-73 (2000) ("[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made.").

[21] The Christys also argue that there is no evidence in the record that OCS or the guardian ad litem affirmatively recommended increased visitation. We do not resolve this factual dispute and instead assume, arguendo, that OCS and the guardian ad litem affirmatively recommended increased visitation.

[22] AS 47.10.080(p).

[23] *See Ross,* 353 P.3d at 829 ("Thus it appears that the superior court found by clear and convincing evidence that court-ordered visitation is in the children's best interests. This legal standard ignored Stefanie and John's parental preferences, and its application violated their constitutional rights." (footnote omitted)).

the maternal side of the family, it does not amount to clear and convincing evidence that denying the Conrads visitation was detrimental to the children.[24]

The superior court therefore erred in ordering visitation.

## V.    CONCLUSION

We VACATE the superior court's grant of visitation to the Conrads and REMAND for entry of judgment consistent with this opinion.

---

[24]    The Christys also challenge the superior court's ruling that terminating visitation was not in the children's best interests.  Because we reverse the visitation order due to insufficient evidence that denial of visitation is detrimental to the children, we need not address the Christys' challenge to the court's best interests determination.