NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JACQUELINE CAMPBELL, | ) |
| | ) Supreme Court No. S-18482 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-21-08858 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| ISHMAEL SCHMIDT, | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 1983 – August 9, 2023 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Jacqueline Campbell, pro se, Austin, Texas, Appellant. Ishmael Schmidt, pro se, Anchorage, Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

A superior court denied a mother's request to modify an order granting custody to their child's father. The mother appeals. She argues that the superior court erred by not modifying the custody order, by denying summer visitation, by denying her request for a writ of assistance, by not rescheduling a hearing that she missed, and by not entering a written order. She also argues that the judge discriminated against her. We affirm the superior court's decision.

_____

\*      Entered under Alaska Appellate Rule 214.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Jacqueline Campbell and Ishmael Schmidt have a six-year-old child who was born in Alaska. In 2019 Campbell and the child moved to Arizona. In September 2020 she sought a protective order in Arizona against Schmidt, and the court granted her request for no contact. Two months later the child returned to Schmidt in Alaska for an agreed-upon one-week visit.

In January 2021 the Arizona court issued a temporary order placing the child in Campbell's care and allowing her to retrieve him from Alaska after Schmidt had failed to return the child. The order also prohibited Campbell and Schmidt from relocating "without agreement of the parties or by Court Order." On February 6 Campbell arrived in Alaska after midnight. She contacted Schmidt and told him that she needed "food . . . a bong and a beer." She arrived at Schmidt's home around 4:00 a.m. and "demanded the child." Schmidt asked if she had been drinking before asking her to leave his home. After a heated exchange, Schmidt called police, who arrested Campbell for trespassing. She was released from jail two days later and returned to Arizona with the child.

In July Campbell and Schmidt reached an agreement that Campbell would move back to Alaska and they would share legal decision-making and have equal parenting time. Campbell revoked her agreement after a dispute over health care issues and moved to Texas with the child, which violated the Arizona court's temporary order.

### B.   Proceedings

Campbell filed a petition in Arizona to establish legal decision-making, parenting time, and child support.[1] Schmidt filed a custody action in Alaska, but the

---

[1]    Arizona uses different terminology than Alaska. *See* ARIZ. REV. STAT. ANN. § 25-403 (2022) (legal decision-making); ARIZ. REV. STAT. ANN. § 25-320 (2022) (child support). *But see* AS 25.24.150; Alaska R. Civ. P. 90.3.

Alaska court determined it lacked jurisdiction.[2]  The Arizona court held a trial on Campbell's petition.  In August the court issued a custody and visitation order.  After analyzing all of the required statutory factors, the court found that it was in the child's best interests that Schmidt become the primary residential parent.  The court based its decision, in part, on Campbell's violation of the temporary order prohibiting relocation and her "unreasonable" behavior in Alaska in February.

Campbell later petitioned for a protective order against Schmidt in Alaska, and Schmidt petitioned for one against Campbell on behalf of their child.  After a hearing in early December, the superior court denied both petitions because there was not "sufficient proof that a short-term order [was] necessary."

Three days later Campbell filed for a writ of assistance, claiming she had recovered judgment against Schmidt for a house; she requested expedited consideration.  On December 21 Campbell filed a motion to modify custody and a request to register the Arizona child custody order.  She also filed an expedited motion to enforce a right to visitation during half of winter break.  Schmidt opposed the motion.

On January 3, 2022, the Arizona court concluded it no longer had "home state" jurisdiction because "neither parent nor the child reside in Arizona any longer." On January 10 the Alaska court denied expedited consideration because Campbell had not served Schmidt and denied the motion to enforce visitation because it was moot: "the start of the visitation period was already expired by the time process was served." The court also dismissed Campbell's complaint for custody because it had already been decided after trial in Arizona and ordered the clerk's office to register the Arizona child support order.  The court then ruled that it would consider the motion to modify custody after registration of the Arizona custody order.  The court issued a written order,

---

[2]    *See* AS 25.30.300 (initial child custody jurisdiction).  Arizona was the child's "home state" because "[a]t least one of the parties and the minor child . . . resided in Arizona continuously for at least . . . six months preceding the filing of the petition."

advising that it would not "simply reconsider the same evidence presented in Arizona" and that Campbell needed to "show that a substantial change in circumstances has occurred since the Arizona custody order was entered."

The court held a hearing on the motion to modify in late April. It denied the motion, finding that Campbell had failed to show a substantial change in circumstances but granting Campbell's request to visit the child on the first weekend in May, as the Arizona court had ordered. But the court ordered that Schmidt's mother supervise the visit.

The court scheduled a status hearing for May 31 and informed both parties. It ordered Campbell to do a urinalysis (UA) and a hair follicle test and to provide the results to the court before the hearing. It also encouraged Campbell to visit the child in early May.

Campbell did not attend the status hearing. The court ordered that Schmidt and Campbell would continue to have "sort of joint legal custody" but that Schmidt had final decision-making authority if they could not agree. The court also modified the visitation schedule that the Arizona court had ordered. It ordered that Campbell's summer visitation would have to be "here in Alaska" and that it would have to be supervised by Schmidt's mother.

Campbell filed three motions for reconsideration of the court's decision in June 2022 and one more in July.[3] The superior court denied each motion, finding that they were "frivolous and are intended to harass." The court also ordered Campbell to "cease and desist from any further such filings." Campbell appeals.

---

[3]     Campbell also requested to change the assigned judge, but the superior court denied the request because it was not timely. *See* Alaska R. Civ. P. 42(c).

## III. STANDARD OF REVIEW

"A trial court has broad discretion in deciding child custody issues."[4] "We will reverse a custody order 'only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous.' "[5] "A factual finding is 'clearly erroneous when a review of the record leaves us with the definite impression that a mistake has been made.' "[6] "The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[7] We review procedural decisions and visitation orders for abuse of discretion.[8]

"Whether the superior court applied the correct legal standard is a question of law that we review de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason and policy.' "[9] We also "review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[10]

## IV. DISCUSSION

Campbell lists 18 issues in her notice of appeal; we group them into 5

---

[4]     *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010).

[5]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991)).

[6]     *Rosemarie P. v. Kelly B.*, 504 P.3d 260, 264 (Alaska 2021) (quoting *Dara v. Gish*, 404 P.3d 154, 159 (Alaska 2017)).

[7]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016).

[8]     *Yelena R. v. George R.*, 326 P.3d 989, 996 (Alaska 2014); *Norris v. Norris*, 345 P.3d 924, 928 (Alaska 2015).

[9]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (quoting *McQuade v. McQuade*, 901 P.2d 421, 423 n.3 (Alaska 1995)).

[10]     *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015) (quoting *Sagers v. Sackinger*, 318 P.3d 860, 863 (Alaska 2014)).

claims.[11]  She argues that the superior court erred by not modifying the custody order and denying summer visitation; by "[o]verlooking and denying [her] writ of assistance"; and "by not rescheduling the [May status] hearing."  Campbell also argues that the superior court discriminated against her and that it should have issued a written order. Schmidt urges us to affirm the superior court's decisions.

### A.  The Court Did Not Abuse Its Discretion By Declining To Modify The Arizona Order.

#### 1.  Custody

Campbell argues that the superior court erred by not modifying the custody order.  She appears to argue that the court failed to "make a decision based on the merits and the child's best interests" and instead the "judge ma[de] a decision by default."

"The superior court may not grant a motion to modify a child custody order unless it finds a substantial change of circumstances."[12]  "The moving parent bears the burden of showing a 'significant or substantial' change in circumstances."[13] "Generally, superior courts must compare current circumstances to a 'baseline' at the time of the most recent custody order . . . to determine if modification is warranted."[14] "If current circumstances are similar to those at the time of the most recent custody order, no substantial change has occurred and the court must decline the modification request."[15]

---

[11]     Because we do not have jurisdiction, we do not address her arguments about the Arizona court's orders.  *See* AS 22.05.010(a).

[12]     *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022); AS 25.20.110(a).

[13]     *Chesser-Witmer v. Chesser*, 117 P.3d 711, 717 (Alaska 2005) (quoting *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001)).

[14]     *Rainer*, 510 P.3d at 482.

[15]     *Id.*

The superior court found that Campbell failed to demonstrate a substantial change in circumstances since the Arizona court issued its order. The court reviewed the Arizona order, remarking on its attention to detail, including its best interests analysis and detailed findings of fact. The Arizona court was "particularly concerned about [Campbell's] move to Texas, because the Temporary Orders filed on January 27, 2021 specifically prohibited relocation without agreement of the parties or by Court Order." It also found that Campbell acted "unreasonably" when she demanded to see the child "around 4:00 a.m." on February 6, 2021. The Arizona court concluded that awarding Schmidt physical custody and moving the child to live with him in Alaska is in the child's best interests. The Alaska court agreed with the Arizona court that the evidence "really strongly support[ed]" awarding custody to Schmidt.

Many of the issues Campbell raises relate to the Arizona court proceedings.[16] And the evidence relating to one of Campbell's arguments appears to support Schmidt.[17] The Alaska court found that "99 percent of [Campbell's evidence] has been . . . stuff that occurred before" and had been considered by the Arizona court. The court found "there was no substantial change in circumstances that had occurred since" the Arizona court "issued a custody order with findings of fact and the conclusions of law in a decree back in August." The court did not abuse its discretion

---

[16] Campbell argues that the Arizona court overlooked Schmidt's "history of domestic violence," illegal activity, "violation of [the] custody order," and "false motions and statements" during the proceedings. She also argues that the court failed to consider evidence of "severe child neglect," the impact of "coaching and parental alienation," and that she was originally the primary caregiver.

[17] Campbell repeats her argument that the Arizona court should have found that Schmidt abused their child because he failed to take care of the child's dental needs. But the evidence presented to the Arizona court showed that it was Schmidt who brought the child to a dentist after learning that the child was at risk of periodontal disease due to "inadequate home care."

by enforcing the original custody order.

## 2. Visitation

Campbell argues that the superior court erred by denying her request for summer visitation and failing to specify a plan for unsupervised visitation. Schmidt responds that Campbell made arranging visitation difficult by "refus[ing] to make arrangements" or tell him her physical address and by telling "children services . . . lies" about him.

Visitation "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[18] "[U]nsupervised visitation by parents is 'the norm' " and a "requirement of supervised visitation must be supported by findings that 'specify how unsupervised visitation will adversely affect the child's physical, emotional, mental, religious, and social well-being.' "[19] "[A]bsent a compelling reason to the contrary that is supported by the record, the court must establish a plan or criteria for ending the supervision requirement."[20]

The Arizona court ordered that while the child lives with Schmidt in Alaska and Campbell lives in a different state, Campbell would receive "time with the child in Alaska the first weekend of each month," as well as summer visitation. The Arizona court did not require supervised visits.

Near the end of the April evidentiary hearing, the superior court advised Campbell that she had "some safety issues to address" before it would order summer visitation. One issue was the child's safety around Campbell's former partner, who has a criminal record and a history of protective orders against him. The other issue was

---

[18] AS 25.20.110(a).

[19] *Fardig v. Fardig*, 56 P.3d 9,14 (Alaska 2002) (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 413-14 (Alaska 1996)).

[20] *Yelena R. v. George R.*, 326 P.3d 989, 1003 (Alaska 2014).

Campbell's sobriety. The court ordered Campbell to complete a UA and hair follicle test before the May status hearing. The court advised Campbell that her visits would be supervised until she provided negative UA test results, and the parties agreed to discuss summer visitation at the next hearing.

Campbell did not attend the status hearing. Schmidt reported that supervised visitation was not going well. The court refused to allow summer visitation in Texas because Campbell had failed to appear at the hearing or provide any test results and because she would be living with her former partner. The court did allow visitation in Alaska, but required that the next visit be supervised by Schmidt's mother and ordered Campbell to disclose where she was staying.

The court "slightly modified the visitation to impose conditions" requiring Campbell to show that she was not living with her former partner and to provide evidence of her sobriety "before any of the unrestricted, unsupervised summer block of visitation." She failed to do so. Because Campbell "has been provided with a means for regaining unsupervised and summer visitation,"[21] the superior court did not abuse its discretion.

## B. The Superior Court Did Not Err By Holding The Hearing When Campbell Failed To Attend.

Campbell contends that the court erred by not rescheduling the status hearing in May 2022. She appears to argue that the court's decision to proceed with the hearing violated her rights to due process.

"Whether the superior court violated a party's due process rights is a question of law, which we review de novo."[22] The superior court order denying reconsideration of its decision to hold the hearing despite Campbell's absence specified

---

[21] *Fardig*, 56 P.3d at 15.

[22] *Lewis G. v. Cassie Y.*, 426 P.3d 1136, 1147 (Alaska 2018) (quoting *Easley v. Easley*, 394 P.3d 517, 520 (Alaska 2017)).

why it did not reschedule the hearing. The order noted that (1) "the precise date and time were established with her concurrence and in open court" while Campbell was present; (2) the notice of the hearing was posted on the court's website immediately after the hearing; and (3) the in-court clerk attempted to telephone Campbell before the hearing. The order also noted that Schmidt had been given the same notice and he appeared for the hearing.

At the April hearing, the court scheduled the next hearing for May 31 at 10:30 a.m. The hearing did not actually begin until 10:42 a.m.; Campbell had neither appeared in person nor called the court. Before the start of the hearing the court directed the clerk to call Campbell, but Campbell claims that she did not get a voice message from the court until "a few days later."

Campbell's first motion for reconsideration listed a variety of reasons that she failed to appear: she was at work; her daughter graduated from 8th grade that evening; and that day was the anniversary of her mother's death. But she did not mention any of these issues when the court asked her in April if she could attend a hearing on May 31. Campbell also claimed that she was "[u]nable to get through for [the] hearing" when she called the court. Campbell's phone records confirm that she made four calls to the court that day. But none of the calls were at the time of the hearing: they were made at 8:40 a.m., 9:41 a.m., 12:11 p.m. and 12:13 p.m. AKDT.

Campbell had personal notice of the hearing date and time a month before it was held and she agreed to it; she had the opportunity to be heard. The superior court did not violate her due process rights.

**C.     The Court Was Not Required To Issue A Written Order.**

Campbell argues that the court should have issued a written order after the May status hearing. She claims it was error not to issue one because "without a written order there is no" way to know "what the court's order specifically is."

Courts are not required to commit oral orders to writing.[23]  Campbell had notice of the hearing and failed to appear.  Although the court did not state specifically that it was sending notice to Campbell of its order, we presume that courts act with regularity.[24]  The court noted that it would "refer Ms. Campbell to the log notes" if she wanted additional information about its order.  The oral ruling is on the record and Campbell could request a copy of it.  The superior court did not err by making oral findings and an oral order.

D.  **The Court Did Not Abuse Its Discretion By Denying Campbell's Writ Of Assistance.**

Campbell challenges the court's denial of her requested writ of assistance. She claims that she "had several police escorts" to help her retrieve the child from Schmidt and "[t]hey all stated . . . [she] needed a writ of assistance."

A writ of assistance is "a court order [that] direct[s] law enforcement officers to assist a person in enforcing a prior court order when there is reason to believe that enforcement efforts may be met with forcible opposition."[25]  When Campbell filed for a writ of assistance, she claimed that she had a judgment against Schmidt for possession of a house.  The information she supplied on the form — claiming that she feared for the child's safety because of Schmidt's threats against her — is irrelevant to the custody case and to the basis of the writ.[26]

---

[23]  *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997) ("While trial courts are encouraged to state all findings in their written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review.").

[24]  *See Christy v. Conrad*, 524 P.3d 231, 235 (Alaska 2023).

[25]  *Mahan v. State*, 51 P.3d 962, 964 (Alaska App. 2002).

[26]  The information may have related to the 2020 Arizona protective order Campbell obtained against Schmidt.  But that order had expired.

Campbell never served her request for a writ of assistance on Schmidt — the person it was directed against.[27] The superior court denied the motion because of the failure to serve Schmidt. The superior court did not err.

### E. The Court Did Not Discriminate Against Campbell.

Campbell claims that the superior court discriminated against her due to her "racial, socioeconomic, and . . . employment" status. We have previously permitted appellants to raise the issue of judicial bias on appeal even if it had not been raised earlier.[28]

A party raising a claim of judicial bias "must demonstrate that the court formed an unfavorable opinion of the party from extrajudicial . . . information" or that the court "hear[d], learn[ed], or [did] . . . something . . . so prejudicial that further participation would be unfair."[29] "[B]ias cannot 'be inferred merely from adverse rulings.' "[30] But "allegations of bias [that are] simply another iteration of . . . discontent with the court's substantive rulings" do not demonstrate that the court discriminated against a party.[31]

Campbell claims that the superior court's comments about her "work in early child development" show that the court was biased against her. During the April evidentiary hearing, Campbell claimed that Schmidt was coaching their child against her, and that she was able to identify coaching because she has "taken child

---

[27] *See* Alaska R. Civ. P. 4(d).

[28] *See Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013); *Downs v. Downs*, 440 P.3d 294, 299 (Alaska 2019).

[29] *Downs*, 440 P.3d at 299-300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

[30] *Id.* at 300 (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015)).

[31] *Ward v. Urling*, 167 P.3d 48, 58 (Alaska 2007).

development" and "used to watch kids" in Alaska.  The court commented, "Yeah, I don't know if that's great salesmanship right now."

The superior court's remarks appear to have questioned the wisdom of Campbell's choice of argument.  The court did not mention or refer to Campbell's racial, socioeconomic, or employment status.  Campbell has not shown that the court was biased against her.

## V.    CONCLUSION

We AFFIRM the superior court's decision.